113 T.C. No. 2

UNITED STATES TAX COURT

ESTATE OF FRANK A. BRANSON, DECEASED,
MARY M. MARCH, EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10028-95.                    Filed July 13, 1999.

P reported the date-of-death fair market values of the stock of S and W as $181.50 and $485, respectively, per share. P sold some of the S stock for $335 per share and all the W stock for $850 per share. The gain realized on the sales by P was distributed to the residuary legatee, M, who reported the gain on her Federal income tax return and paid the income tax due. R determined a deficiency in P's estate tax liability. R's determination was based on his assertion that at the date of death the fair market values of the S and W shares were $300 and $850, respectively, per share. In Estate of Branson v. Commissioner, T.C. Memo. 1999-231, we found that the date-of-death fair market values of the S and W shares were $276 and $626, respectively. P asserts that it is entitled to equitable recoupment of the income tax overpaid by M, the refund of which is barred by the statute of limitations.

Held, under the doctrine of equitable recoupment, P is entitled to a credit for the income tax overpaid by M on the

gain recognized on the sales of the shares due to the lower values reported on the estate tax return. Estate of Bartels v. Commissioner, 106 T.C. 430 (1996); Estate of Mueller v. Commissioner, 101 T.C. 551 (1993), followed.


Robert A. Mills, Marco L. Quazzo, and Mary Catherine Wirth, for petitioner.

Rebecca T. Hill, Bryce A. Kranzthor, and Elizabeth Groenewegen, for respondent.


OPINION


PARR, Judge:  In Estate of Branson v. Commissioner, T.C. Memo. 1999-231 (Branson I), we redetermined the increased value of the shares of Savings Bank of Mendocino County (Savings) and Bank of Willits (Willits) included in decedent's gross estate. We now consider whether this Court has authority to apply equitable recoupment in light of the opinion of the Court of Appeals for the Sixth Circuit in Estate of Mueller v. Commissioner, 153 F.3d 302 (6th Cir. 1998), affg. on other grounds 107 T.C. 189 (1996), and if so, whether petitioner is entitled under that doctrine to credit for the taxes paid by the residuary legatee on the excessive gain recognized from the sales of the shares due to the lower values provided by the estate tax return.  Following our opinions in Estate of Bartels v. Commissioner, 106 T.C. 430 (1996), and Estate of Mueller v. Commissioner, 101 T.C. 551 (1993), we hold that this Court has

authority to apply equitable recoupment.  We further hold that petitioner is entitled to recoup the residuary legatee's excessive payment of income tax against the estate tax deficiency.

The relevant facts are taken from our findings in Branson I, the parties' submissions, and the existing record.  Petitioner is the estate of Frank A. Branson (decedent), who died testate on November 9, 1991, in Mendocino, California.  Mary March (March), decedent's daughter, is the executrix and residuary legatee of the estate.  March's legal address was Potter Valley, California, at the time the petition in this case was filed.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar, unless otherwise indicated.

Background

At the time of his death, decedent owned 12,889 shares of Savings stock and 500 shares of Willits stock.  Petitioner reported the value of the Savings and Willits shares as $181.50 and $485, respectively, per share, on its Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return.

Decedent's will provided that all estate taxes were to be paid from the residue of the estate.  Pursuant to a court order,

March, as executrix, was granted authority to sell 2,800 shares of Savings stock at $335 per share and 500 shares of Willits stock at $850 per share. March sold the shares in 1992 and paid Federal and State of California estate taxes of $1,008,698 and $200,632, respectively. March, as executrix and residuary legatee, assumed individual liability for any estate taxes later found due from petitioner.

Petitioner reported the capital gain from the sales of the Savings and Willits shares on Schedule D of its 1992 Form 1041, U.S. Fiduciary Income Tax Return, which it filed on or about April 15, 1993. Petitioner calculated the gain by subtracting the value of the shares reported on the estate tax return from the amount received from their sale. Petitioner reported $429,800 of gain from the sale of the Savings shares and $182,500 from the sale of the Willits shares.[1] Petitioner, however, did not pay any income tax on these gains; instead, it reported a net long-term capital gain distribution of $610,274 to March on Schedule K-1, Beneficiary's Share of Income, Deductions, Credits, Etc., which it attached to the Form 1041.

March and her husband, Charles March, filed their 1992 Form 1040, U.S. Individual Income Tax Return, using the status of

---

[1]Petitioner also reported $6,955 of long-term capital gain from the sale of 2,000 shares of PG&E stock and a $738 net long-term capital loss carryover from 1991. The value of the PG&E shares and the loss carryover are not at issue in this case.

"Married filing joint return", on or about April 15, 1993, and paid the tax due. March reported the $610,274 gain on line 13 of Schedule D, which was attached to the Form 1040, as "Net long-term gain or (loss) from partnerships, S corporations, and fiduciaries".

Respondent determined a deficiency in petitioner's estate tax liability on the grounds that the fair market values of the Savings and Willits shares on the date of death were $300 and $850, respectively, per share. In Branson I, we found that the date-of-death fair market values of the Savings and Willits shares were $276 and $626, respectively. Petitioner asserts that it is entitled to equitable recoupment of the income tax overpaid by March, the refund of which is barred by the statute of limitations, in determining the amount of its Federal estate tax liability.

Discussion

Relying upon Estate of Mueller v. Commissioner, 153 F.3d 302 (6th Cir. 1998), respondent asserts that this Court lacks jurisdiction to consider petitioner's claim for equitable recoupment. In Estate of Mueller v. Commissioner, 101 T.C. 551 (1993) (Mueller II), we opined that we have jurisdiction to consider claims of equitable recoupment. In Estate of Mueller v. Commissioner, 107 T.C. 189 (1996) (Mueller III), we held that equitable recoupment is restricted to use as a defense against an

otherwise valid claim. As a result of our valuation of the stock includable in Mueller's estate, see Estate of Mueller v. Commissioner, T.C. Memo. 1992-284, and the taxpayer's failure to claim a large previously taxed property credit on its Federal estate tax return, it became apparent that there was no deficiency in estate tax; rather, the taxpayer was entitled to recover an overpayment of estate tax, regardless of equitable recoupment. Inasmuch as application of equitable recoupment under these circumstances would have increased the amount the taxpayer was entitled to recover as an overpayment, rather than reduce a deficiency, we held that equitable recoupment was not available. The taxpayer appealed. The Court of Appeals for the Sixth Circuit affirmed Mueller III, on the ground that this Court lacked jurisdiction to consider the affirmative defense of equitable recoupment. See Estate of Mueller v. Commissioner, supra.

The Court of Appeals for the Sixth Circuit interpreted sections 6214(b) and 6512(b) together to

> explicitly confer on the Tax Court jurisdiction to do no more than determine the amount of the deficiency before it. The Tax Court's jurisdiction cannot extend beyond its statutory confines to encompass an equitable remedy such as recoupment because the Tax Court "is a court of limited jurisdiction and lacks general equitable powers," and because "[t]he Tax Court and its divisions shall have such jurisdiction as is conferred on on them by [Title 26]." * * * [Estate of Mueller v. Commissioner, 153 F.3d at 305; citations omitted.]

The Court of Appeals further relied upon <u>Commissioner v. Gooch Milling & Elevator Co.</u>, 320 U.S. 418 (1943), and several cases decided in Federal courts which have cited <u>Gooch Milling</u>,[2] for the proposition that this Court does not have jurisdiction to consider the affirmative defense of equitable recoupment.

The jurisdictional status of equitable recoupment in this Court has had a long history, which we reviewed with painstaking care in <u>Estate of Bartels v. Commissioner</u>, 106 T.C. 430 (1996) and in Mueller II. We do not here reiterate that history, except to distinguish our position from that of the Court of Appeals for the Sixth Circuit.

In Mueller II, we interpreted <u>Commissioner v. Gooch Milling & Elevator Co.</u>, <u>supra</u>, as presenting the question whether the Board of Tax Appeals had authority to apply the doctrine of equitable recoupment in income tax cases. We concluded that <u>Gooch Milling</u> does not prevent this Court from "considering the affirmative defense of equitable recoupment when it is properly raised in a timely suit for redetermination of a tax deficiency over which we have jurisdiction." See Mueller II, 101 T.C. at 560.

---

[2]See <u>Rothensies v. Electric Storage Battery Co.</u>, 329 U.S. 296, 303 (1946); <u>Elbert v. Johnson</u>, 164 F.2d 421, 424 (2d Cir. 1947); <u>Mohawk Petroleum Co. v. Commissioner</u>, 148 F.2d 957, 959 (9th Cir. 1945), affg. 47 B.T.A. 952 (1942); <u>Estate of Van Winkle v. Commissioner</u>, 51 T.C. 994, 999 (1969); <u>Wiener Mach. Co. v. Commissioner</u>, 16 T.C. 48, 54 (1951).

In its opinion, the Court of Appeals for the Sixth Circuit did not consider the difference between the Board of Tax Appeals and the Tax Court. At the time the Board of Tax Appeals decided the issue of whether it could consider equitable recoupment in Gooch Milling & Elevator Co., the Board was an independent agency in the Executive Branch of the Government. See sec. 900(k) of the Revenue Act of 1924, ch. 234, 43 Stat. 253, 338. As a result of the Tax Reform Act of 1969, Pub. L. 91-172, sec. 951, 83 Stat. 487, 730, the Tax Court became a legislative court under Article I of the Constitution. See sec. 7441; Freytag v. Commissioner, 501 U.S. 868, 887 (1991) (Congress enacted legislation in 1969 with the express purpose of making the Tax Court an Article I court rather than an executive agency). Thus, the Tax Court exercises judicial, rather than executive, legislative, or administrative, power. See Freytag v. Commissioner, supra at 890-891.

The difference between an agency of the Executive Branch and an Article I court is material to this issue. "The Tax Court's function and role in the federal judicial scheme closely resemble those of the federal district courts, * * * [and it] exercises its judicial power in much the same way as the federal district courts exercise theirs." Freytag v. Commissioner, supra at 891.[3]

_____

[3]See also Flight Attendants Against UAL Offset v. Commissioner, 165 F.3d 572, 578 (7th Cir. 1999) ("the present Tax
(continued...)

Moreover, in deciding cases over which we have jurisdiction "we have applied the equity-based principles of waiver, duty of consistency, estoppel, substantial compliance, abuse of discretion, laches, and the tax benefit rule." See Woods v. Commissioner, 92 T.C. 776, 784 (1989); fn. refs. omitted. Thus, this Court should be properly viewed as exercising full judicial power within its limited subject matter jurisdiction.[4]

Furthermore, in United States v. Dalm, 494 U.S. 596, 611 n.8 (1990), the Supreme Court noted: "We have no occasion to pass upon the question whether Dalm could have raised a recoupment claim in the Tax Court." See also id. at 615 n.3 (Stevens, J., dissenting) (commending the majority's reservation of the question whether the Tax Court has authority to consider recoupment). Thus, although the Supreme Court agreed that the Board of Tax Appeals could not consider equitable recoupment, we believe that the Supreme Court has left this issue open with respect to the Tax Court as presently constituted. Commissioner v. Gooch Milling & Elevator Co., and its progeny, therefore, do not control the outcome of this case.

---

[3](...continued)
Court operates pretty indistinguishably from a federal district court.").

[4]See Saltzman, IRS Practice and Procedure, par. 5.06[1], at S5-20 (2d ed. 1991); Willis, "Equitable Recoupment: More Pitfalls for the Unwary", Tax Notes 361 (Oct. 19, 1998).

We have found support for our holding that we have authority to apply equitable recoupment in section 6214(b).[5] The concluding language of section 6214(b), which speaks in terms of this Court's not having "jurisdiction <u>to determine</u> whether or not <u>the tax</u> for any other year or calendar quarter has been overpaid or underpaid" (emphasis added), means that, at most, we are precluded from determining the income tax or gift tax for any prior period. See <u>Estate of Bartels v. Commissioner</u>, 106 T.C. at 434. In redetermining the amount of the estate tax deficiency in this case, we are not determining the amount of income tax or gift tax deficiency or overpayment from any prior period. See <u>id.</u> We are considering such facts with relation to the share value included in both corpus and income so that this item[6] may be examined in all its aspects, as is necessary to correctly

_____

[5]Sec. 6214(b) provides:

The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year or calendar quarter shall consider such facts with relation to the taxes for other years or calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid.

[6]See <u>infra</u> pp.17-18.

redetermine the amount of the estate tax deficiency now before

us.[7]

In Estate of Bartels v. Commissioner, supra at 435-436, we

stated:

> what is involved herein is a question of our authority
> and not a question of our jurisdiction since we already
> have jurisdiction by virtue of the income tax
> deficiency notice and the timely petition filed in
> response thereto. Thus, the cases articulating a
> principle that the jurisdiction of this Court is
> limited to that conferred upon it by Congress
> represented by Commissioner v. Gooch Milling & Elevator
> Co., supra, and its progeny, have no application. * * *
> [Citation omitted.]

Therefore, "'While we cannot expand our jurisdiction through

equitable principles, we can apply equitable principles in the

disposition of cases that come within our jurisdiction.'" See

Woods v. Commissioner, supra at 784-785 (quoting Berkery v.

Commissioner, 90 T.C. 259, 270 (1988) (Hamblen, J., concurring)).

In this case, respondent accepted petitioner's and March's

income tax returns, which reported gain calculated by using the

fair market values of the shares reported on the estate tax

return. Respondent asserted a higher date-of-death fair market

value for those same shares for estate tax purposes, determined a

deficiency in petitioner's estate tax, and issued a statutory

notice of deficiency. In response, petitioner filed its timely

---

[7]Furthermore, sec. 6214(b) specifically applies only to
income and gift taxes, and makes no mention of estate tax. See
Estate of Mueller v. Commissioner, 101 T.C. 551, 560 (1993).

petition with this Court.  There is no doubt that we have jurisdiction of this case.  We may therefore exercise full judicial power in its disposition.

Court of Appeals for the Ninth Circuit

Any appeal in this case lies to the Court of Appeals for the Ninth Circuit, and we are bound by any decision of that court squarely in point.  See Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).  Respondent asserts that this issue was settled in the Ninth Circuit by Mohawk Petroleum Co. v. Commissioner, 148 F.2d 957, 959 (9th Cir. 1945), affg. 47 B.T.A. 952 (1942).

In Mohawk Petroleum Co. v. Commissioner, supra, the Court of Appeals relied on Gooch Milling & Elevator Co. for its decision that the Board of Tax Appeals lacked jurisdiction to consider equitable recoupment of income taxes.  See id. at 959.  Because we have found that Gooch Milling & Elevator Co. is not on point, it follows that Mohawk Petroleum Co. is not dispositive.  Accordingly, we disagree with respondent's assertion.

In Mueller II, we found additional support for our decision in sections 7422(e), 6512(a), and 7481.  See Mueller II, 101 T.C. at 557.  Considered together, these sections indicate that "Congress intended the Tax Court to have full judicial authority to resolve issues over which it has jurisdiction".  Woods v.

Commissioner, 92 T.C. at 788.  Judge Halpern further observed that

> the Code is structured to channel tax litigation to the Tax Court.  We are the tax forum of choice, because only here can the tax liability be litigated prior to payment.  Understandably, we preside over the vast majority of tax litigation. * * *  [Mueller II, 101 T.C. at 564 (Halpern, J., concurring); citations omitted.]

If this Court lacked authority to consider equitable recoupment, a taxpayer without the practical ability to prepay the contested deficiency and sue for refund in a different forum would be precluded from raising a defense available to a more affluent taxpayer who has the means to do so.  We do not believe that Congress intended this result.  Accordingly, we shall continue to follow our opinions in Estate of Bartels v. Commissioner, 106 T.C. 430 (1996), and Mueller II, supra.

Defensive Use

We held in Mueller III that equitable recoupment is restricted to use as a defense against an otherwise valid claim for a deficiency, and not to increase an overpayment of tax.  See also United States v. Dalm, 494 U.S. at 608 (tax refund courts are without jurisdiction to consider time-barred refund claims based solely upon equitable recoupment).  We have found that petitioner underreported the values of the Savings and Willits shares on its estate tax return.  Accordingly, petitioner has a deficiency in estate tax, and is, therefore, properly positioned

to invoke the doctrine of equitable recoupment to reduce that deficiency by the amount of the income tax overpaid because of its use of the same underreported value as the basis of the shares.

Legatee Not Diligent

Respondent argues that equitable recoupment should not be permitted in this case because March was not diligent in seeking a refund of the income tax paid on the gain passed through to her as residual legatee.  The estate tax notice of deficiency was issued on March 16, 1995, and the limitations period did not expire on March's income tax refund until April 15, 1996.  March thus had more than a year within which to file a protective claim for refund.

In addressing this issue in United States v. Bowcut, 287 F.2d 654, 657 (9th Cir. 1961), the Court of Appeals for the Ninth Circuit, citing Bull v. United States, 295 U.S. 247 (1935), stated:

> It is apparently not the diligence of the taxpayer as
> to his legal rights which controls, but rather the
> inequity of holding that, while the government's rights
> under a transaction continue unimpaired, its
> adversary's rights thereunder are barred by
> limitations.

Accordingly, we do not consider March's lack of diligence to be a factor in deciding whether petitioner is entitled to claim equitable recoupment.

Requirements of Equitable Recoupment

In a recent case, the Supreme Court reaffirmed that a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction.  See United States v. Dalm, supra at 608 (interpreting Bull v. United States, 295 U.S. 247 (1935), and Stone v. White, 301 U.S. 532 (1937)).

A claim of equitable recoupment requires:  (1) That the refund or deficiency for which recoupment is sought by way of offset be barred by time; (2) that the time-barred offset arise out of the same transaction, item, or taxable event as the overpayment or deficiency before the Court; (3) that the transaction, item, or taxable event have been inconsistently subjected to two taxes; and (4) that if the subject transaction, item, or taxable event involves two or more taxpayers, there be sufficient identity of interest between the taxpayers subject to the two taxes so that the taxpayers should be treated as one. See United States v. Dalm, supra at 604-605 & n.5; Coohey v. United States, 172 F.3d 1060 (8th Cir. 1999); Parker v. United States, 110 F.3d 678, 682-683 (9th Cir. 1997).

Each of these requirements is met in the instant case.

1.  Refund Time-Barred

March filed her 1992 Federal income tax return on or about April 15, 1993, and payment was made on the same date that the return was filed.  March has never filed a claim for refund; therefore, a claim for refund is barred by section 6511(a).

2.  Single Transaction, Item, or Taxable Event

Since Bull v. United States, supra, the Supreme Court has emphasized that a claim of equitable recoupment will lie only where the Government has taxed a single transaction, item, or taxable event under two inconsistent theories.  See United States v. Dalm, 494 U.S. at 608 n.5 (construing Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 299-300 (1946), Bull v. United States, supra, and Stone v. White, supra).  The terms "single transaction", "item", or "event" are not synonymous, and the inclusion of "item" in this phrase is significant in our case.

In Bull v. United States, supra, Archibald Bull (Bull) died owning a partnership interest, including the right to receive future profits.  The partnership interest was transferred to his estate, and, later his estate received the sum of approximately $212,000, constituting its share of partnership profits earned subsequent to Bull's death.  In 1921, the executor, at the Commissioner's insistence, erroneously included this sum in the gross estate under the theory that it was estate corpus, and thus, it was subjected to estate taxes.  In 1925, the Government

determined a deficiency in the estate's income tax on the correct theory that the same sum was income to the estate. The executor paid the income tax in 1928. Later, in that same year, the executor filed a claim for refund for the income tax paid and sued for refund after the claim was denied.

In considering the issue before it, the Supreme Court stated:

> A serious and difficult issue is raised by the claim that the same receipt has been made on the basis of both income and estate tax, although the item cannot in the circumstances be both income and corpus; and that the alternative prayer of the petition required the court to render a judgment which would redress the illegality and injustice resulting from the erroneous inclusion of the sum in the gross estate for estate tax. * * * [Bull v. United States, 295 U.S. at 255; emphasis added.]

The Supreme Court found that the estate's receipt of the sum was properly taxable as income to the estate and that under the facts of the case, "the item could not be both corpus and income of the estate." See Bull v. United States, supra at 258.

Thus, the Supreme Court viewed the sum of money owed to Bull's estate as an item. See id. at 255. We have no reason to believe that the same sum may be defined as an item for income tax purposes but be defined as something other than an item when included in corpus for purposes of calculating the estate tax. See id. at 256. In the case at hand, the same item (in terms of

share value)[8] was included in both petitioner's corpus in determining the value of the gross estate and in income.[9] Therefore, the estate tax and the income tax were imposed on the same item.

Furthermore, under the facts of the case before us, this item cannot properly be both corpus and income to the estate. The income tax paid by the residuary legatee on that identical item is money which the Government is not justly entitled to retain. See id. at 261 ("While here the money was taken through mistake without any element of fraud, the unjust retention is immoral and amounts in law to a fraud on the taxpayer's rights.").

In holding that equitable recoupment was available for the taxpayer to credit the estate tax paid on the same item subjected

---

[8]Petitioner reported the date-of-death fair market value of the Savings shares at $181.50 per share and used that amount as the basis in calculating the gain on the shares later sold. We have determined that the date-of-death fair market value of each Savings share is $276. Thus, $94.50 ($276 minus $181.50) of share value for each share of Savings stock was included in both corpus and income. Similarly, $141 ($626 minus $485) of share value for each share of Willits stock was included in both corpus and income.

[9]Petitioner sold the shares and calculated the amount of income (capital gain) realized from the sale. The income passed through the estate to March, who reported it on her return and paid the income tax due. Thus, although March recognized the income, it was realized by petitioner.

to the income tax, the Supreme Court stated:

> This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.  Such a defense is never barred by the statute of limitations so long as the main action itself is timely.  [Id. at 262.]

Although the "single transaction" requirement was mentioned in Bull v. United States, supra, it was the stated ground for decision in Rothensies v. Electric Storage Battery Co., supra. In that case, the taxpayer erroneously paid excise taxes on the sale of electric storage batteries from April 1919 to April 1926. In July 1926, the taxpayer filed a claim for refund for the periods of mid-1922 to 1926, the years not barred by the statute of limitations, and received a refund in 1935.  Although the taxpayer had been deducting the payment of these taxes, it did not include the refund in income.  The Government determined a deficiency in the taxpayer's 1935 income tax, and the taxpayer paid the deficiency and sued for refund when its claim was denied.

In both the trial court and the Court of Appeals for the Third Circuit, the taxpayer asserted successfully that the income tax for 1935 should be reduced by equitable recoupment for the time-barred excise tax overpayments for the 1919 through mid-1922 years.  In affirming the District Court, the Court of Appeals for the Third Circuit stated that the same transaction element should

be interpreted to mean that there be "a logical connection between main claim and the recoupment claim." Electric Storage Battery Co. v. Rothensies, 152 F.2d 521, 524 (3d Cir. 1945), revd. 329 U.S. 296 (1946).

In reversing on this issue, the Supreme Court stated that equitable recoupment

> has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole. [Rothensies v. Electric Storage Battery Co., 329 U.S. at 299.]

In Rothensies v. Electric Storage Battery Co., supra, it is clear that the case involved separate transactions, separate items, and separate taxable events; the time-barred overpayments arose from the erroneous treatment of many separate sales of batteries as subject to excise taxes,[10] and the income tax deficiency arose from the failure to include the refunded open-year excise taxes in gross income under the tax benefit rule.[11] The time-barred refunds of the 1919 through mid-1922 excise taxes and the inclusion of the refunded taxes that were paid in 1922

---

[10]Therefore, the excise taxes paid in the time-barred years were not paid on the same item or in the same transaction, but on the same type of item or transaction.

[11]See Andrews, "Modern-Day Equitable Recoupment and the 'Two Tax Effect': Avoidance of the Statute of Limitation in Federal Tax Controversies", 28 Ariz. L. Rev. 595, 610 (1986).

through 1926 in the taxpayer's 1935 income had no logical connection. The erroneous failure to include the excise tax refund in income for 1935 is not the same transaction as erroneously paying excise taxes in 1919 through mid-1922. Furthermore, there was no transactional nexus between the time-barred excise taxes paid in 1919 through mid-1922 and the refunded excise taxes paid in 1922 through 1926, which the taxpayer was required to include in income in 1935.

The Supreme Court has not decided a case based on the single-transaction requirement since Rothensies v. Electric Storage Battery Co., supra. In a recent case, United States v. Dalm, 494 U.S. 596 (1990), the Court held that equitable recoupment could only be used defensively, and the Court stated that since Bull v. United States, 295 U.S. 247 (1935), it has emphasized "that a claim of equitable recoupment will lie only where the Government has taxed a single transaction, item, or taxable event under two inconsistent theories." United States v. Dalm, supra at 605 n.5.

Consequently, the interpretation and application of the single-transaction requirement has been left to the lower courts, which has resulted in conflicting authority.

The cases on which petitioner mainly relies are Boyle v. United States, 355 F.2d 233 (3d Cir. 1965), revg. and remanding per curiam 232 F. Supp. 543 (D.N.J. 1964); O'Brien v. United

<u>States</u>, 766 F.2d 1038 (7th Cir. 1985), revg. 582 F. Supp. 203 (C.D. Ill. 1984); <u>Estate of Vitt v. United States</u>, 706 F.2d 871 (8th Cir. 1983); <u>United States v. Herring</u>, 240 F.2d 225 (4th Cir. 1957); and <u>United States v. Bowcut</u>, 287 F.2d 654 (9th Cir. 1961).

In <u>Boyle v. United States</u>, <u>supra</u>, the decedent died in 1953 owning preferred stock with more than 20 years of accumulated undeclared dividends (the arrearages). The decedent's assets were transferred to his estate, including the value of the arrearages, and the estate tax was paid accordingly. In 1954, the executors distributed the preferred stock among the four beneficiaries under the will.

Later, the beneficiaries, on receiving those arrearages, declared their receipt and listed them as nontaxable income on their tax returns. In 1958, after the period of limitations had expired to claim a refund of the estate taxes, the Government determined deficiencies in the beneficiaries' income tax because of their reporting position with respect to the dividends. The beneficiaries paid the income tax deficiencies and brought a suit for refund. The District Court denied them equitable recoupment against the time-barred estate tax, holding that the single-transaction test of <u>Rothensies v. Electric Storage Battery Co.</u>, <u>supra</u>, was not satisfied. See <u>Boyle v. United States</u>, 232 F. Supp. at 549-550. The Court of Appeals for the Third Circuit reversed, finding that there was "double taxation of the single

item" as both corpus and income, which sufficed to satisfy the requirements of Bull v. United States. See Boyle v. United States, 355 F.2d at 236.

The Court of Appeals distinguished Rothensies v. Electric Storage Battery Co., on the grounds that in Rothensies v. Electric Storage Battery Co., the taxpayer "waited over twenty years to seek a refund",[12] and the facts in Boyle were much closer to the facts in Bull than were the circumstances of the taxpayer in Rothensies v. Electric Storage Battery Co. See Boyle v. United States, 355 F.2d at 236-237.

In O'Brien v. United States, supra, decedent's estate paid estate tax on the stock of a closely held corporation, which it valued at $215.7796 per share. In the year following the decedent's death, the Government determined a deficiency in the estate tax, asserting a higher value of the stock, and the taxpayer (one of decedent's heirs) filed a petition to the Tax Court. While the valuation issue was pending, the corporation was liquidated, and, for the purpose of calculating the resulting capital gain reportable on his income tax return, the taxpayer used the value of the shares reported on the estate tax return. The Government did not dispute this valuation and accepted the payment of income tax on the gain arising from the liquidation.

---

[12]Thus, the Court of Appeals for the Third Circuit indicated that in any equitable claim, an equitable defense, such as laches, may bar the claim.

In 1980, the Tax Court entered a stipulated decision in the estate tax case, setting the value of the stock at $280.10 per share. The taxpayer did not assert the equitable recoupment claim in the Tax Court case.

On April 8, 1981, the taxpayer filed a claim for refund for the income taxes that he overpaid in 1975 because of his use of the lower value as the stock's basis. The claim for refund was denied on the grounds that the period of limitations had run for the 1975 taxable year. The taxpayer then filed suit for refund in District Court, arguing that the basis for the stock should have been higher and using equitable recoupment as the ground for the suit.[13]

The District Court agreed, finding the single-transaction requirement satisfied. Like the Court of Appeals for the Third Circuit in Boyle, the District Court in O'Brien relied upon Bull, and found that the facts of O'Brien were closer to Bull than to Rothensies v. Electric Storage Battery Co. The Court of Appeals for the Seventh Circuit reversed, on the ground that equitable recoupment cannot be used offensively as an independent ground

---

[13]The taxpayer also argued for the refund under secs. 1311-1314, the statutory mitigation provisions. The District Court accepted this argument, but the Court of Appeals for the Seventh Circuit reversed this conclusion. See O'Brien v. United States, 582 F. Supp. 203, 206-207 (C.D. Ill. 1984), revd. 766 F.2d 1038 (7th Cir. 1985).

for reopening years closed by the statute of limitations.  See

O'Brien v. United States, 766 F.2d at 1049.

The Court of Appeals for the Seventh Circuit noted, however,

that the single-transaction test had been met.  The court stated:

> The "single transaction test," requiring that a "single transaction or taxable event ha[s] been subjected to two taxes on inconsistent theories," Rothensies, 329 U.S. at 300, 67 S.Ct. at 272, also appears to be satisfied on these facts if we adopt the reasoning of the Third Circuit in Boyle.  The Boyle court ruled that the "single transaction test" was satisfied where undeclared dividends were erroneously treated as assets, included as part of the corpus of decedent's estate and subjected to estate tax, but later were ruled taxable income upon distribution to the beneficiaries.  The net effect, the court noted, was inconsistent treatment of the same fund directly resulting in an overpayment of tax by the estate. Essentially the same situation exists here where inconsistent tax treatment of the same stock (in terms of valuation) has directly resulted in the overpayment of tax by the beneficiaries.  [O'Brien v. United States, supra at 1050-1051 n.16]

Petitioner also relies upon Estate of Vitt v. United States,

706 F.2d 871 (8th Cir. 1983), to support its position that double

taxation of the same fund under inconsistent theories satisfies

the single-transaction requirement.[14]  In Estate of Vitt v.

---

[14]The Court of Appeals for the Eighth Circuit cited Estate of Vitt v. United States, 706 F.2d 871 (8th Cir. 1983), in a recently decided case, Coohey v. United States, 172 F.3d 1060, (8th Cir. 1999).  In Coohey v. United States, supra, the court found that, under the facts of that case, an AMT refund, based upon repeal of a statute, for one year and the allowance of an AMT credit for the following year "are clearly a single transaction", because without the assessment and payment of the AMT for the earlier year, there would never have been an AMT

(continued...)

United States, supra, Edward Vitt owned property with his wife, Verlena, which they held as tenants in the entirety even though Edward had provided all the consideration for its purchase. The Vitts conveyed the property by three separate deeds to their daughters and grandchildren, retaining a life estate for their joint lives. When Edward died in 1964, his estate included one-half of the value of the property for estate tax purposes. In reliance upon a revenue ruling that construed section 2036, the Government determined that the entire value of the property, less the actuarial value of Verlena's life estate, was includable in Edward's gross estate. This resulted in the inclusion of more than one-half of the value of the property in Edward's estate. The estate paid the tax and interest due, and later, the revenue ruling was revoked.

In 1975, Verlena died, and her estate tax return was filed reporting her interest in the property but assigning it no value for estate tax purposes. The estate did not report any value for Verlena's interest in the property because it was previously included in Edward's estate. The Government properly asserted that one-half of the value of the property was includable in Verlena's estate and determined a deficiency in the estate tax.

---

[14](...continued)
credit given to the taxpayer for the succeeding year.

The estate paid the deficiency and then filed suit for refund in District Court.

The District Court found that no more than one-half of the value of property was includable in Edward's estate and that the value in excess of that amount was included in error. See Estate of Vitt v. United States, 536 F. Supp. 403, 407 (E.D. Mo. 1982), affd. 706 F.2d 871 (8th Cir. 1983). Further, the District Court found that although the taxes were imposed at different times, the subject matter of the tax never changed. Therefore, "To hold on these facts that there is no common taxable event or fund would be to blindly follow a narrow, overly simplified definition of what constitutes a single transaction or taxable event". See id. at 408. Accordingly, the District Court found that Verlena's estate was entitled under the doctrine of equitable recoupment to a credit for the excess tax paid by Edward's estate.

In affirming, the Court of Appeals for the Eighth Circuit considered the Government's argument that the single-transaction requirement was not satisfied and found that, in addition to the double taxation of the same property, the inclusion of the property in both estates under section 2036 in essence resulted from the same transaction--the Vitt's transfer of the real property with retention of a life estate for their joint lives

and for the life of the survivor.  See <u>Estate of Vitt v. United States</u>, 706 F.2d at 875.[15]

Finally, petitioner relies on <u>United States v. Herring</u>, 240 F.2d 225 (4th Cir. 1957), and <u>United States v. Bowcut</u>, 287 F.2d 654 (9th Cir. 1961).  These cases, like the case now before us, concerned the estate tax and the income tax, and in both cases the taxes were not imposed on a single taxable event.  In both cases, however, the single-transaction requirement was found to be satisfied, and equitable recoupment was applied in the taxpayer's favor.

In <u>United States v. Herring</u>, <u>supra</u>, the decedent died in 1948, and his surviving spouse, as administratrix, filed the estate tax return in 1949, paying the tax due.  In 1951, the Government issued a preliminary notice proposing a deficiency in

_____

[15]Although arguably there were two taxable events in <u>Estate of Vitt v. United States</u>, <u>supra</u>,-- the death of Edward Vitt and the death of Verlena Vitt, see <u>Parker v. United States</u>, 110 F.3d 678, 684 (9th Cir. 1997) (finding that death is a taxable event), see <u>infra</u> p. 46--the Court of Appeals for the Eighth Circuit considered the single transaction requirement met by the precipitating transaction, the lifetime transfer of the property to the Vitts' descendants.  Similarly, in the instant case, arguably there were two transactions or taxable events--the transfer of the stock to petitioner upon decedent's death and the subsequent sale by petitioner of that stock--the precipitating transaction, however, was the valuation of the same item in the transfer from decedent to petitioner.  We note that the Supreme Court in <u>Bull v. United States</u>, 295 U.S. 247 (1935), also did not consider the death of Bull and the transfer of the overvalued partnership interest to the estate; instead it viewed the precipitating transaction--the distribution of the partnership income--as the single transaction.

income taxes, civil penalties for fraud, delinquency penalties, and interest against the surviving spouse individually and the estate for the years 1932 to 1948. The assessment for tax was made in 1952, after the time for filing a claim for refund of the estate taxes had expired. The administratrix filed suit for refund of the estate taxes that would not have been due if the income tax deficiency had been deducted from the value of the estate, but the District Court dismissed this suit as untimely. The administratrix then paid the income tax deficiency, which greatly reduced the size of the estate, and sued for refund of the income taxes paid on the theory that the estate was entitled to equitable recoupment of the overpayment of the time-barred estate tax. The District Court approved this theory and gave judgment for the estate in the amount claimed, and the Government appealed.

In affirming, the Court of Appeals for the Fourth Circuit distinguished Rothensies v. Electric Storage Battery Co., 329 U.S. 396 (1946), on the ground that there the transactions "were too remote from one another to justify recoupment and that claims so long dead could not be resurrected under the doctrine." United States v. Herring, supra at 227. The Court of Appeals for the Fourth Circuit found that, although the case might differ in

some respects from <u>Bull v. United States</u>, <u>supra</u>, in both cases

> the Government has received monies which in equity and good conscience belong to the taxpayer, and in both the allowance of recoupment should be made to avoid the bar of the statutes of limitations.  It is true that in the Bull case both claims of the Government grew out of the same transaction and were asserted against the same money in the hands of the executor; but that, in practical effect, is the situation that prevails here. The Government has asserted two claims against the monies of the estate that came into the hands of the administratrix--one on account of past due income taxes and the other on account of the estate tax due on the net estate, and it is impossible to determine the amount of the latter without making due allowance for the deduction caused by the former. * * *  [<u>United States v. Herring</u>, 240 F.2d at 228.]

Four years after the Court of Appeals for the Fourth Circuit decided the <u>Herring</u> case, the Court of Appeals for the Ninth Circuit affirmed a case with similar facts, <u>United States v. Bowcut</u>, 287 F.2d 654 (9th Cir. 1961), affg. 175 F. Supp. 218 (D. Mont. 1959).  In this case, the decedent died in 1952, and the executrix (decedent's former wife) filed the estate tax return in 1953, paying the tax due.  In 1954, the Government proposed adjustments to decedent's income tax for 1947 through 1950 for additional income tax, civil fraud penalties, and interest.  The executrix paid the taxes, penalties, and interest in installments, and filed suit in District Court for refund of income tax in the amount of the overpaid estate taxes on the grounds of equitable recoupment.

In the District Court, the Government argued, inter alia, that equitable recoupment was not appropriate under <u>Bull v.</u>

United States, supra, because the single-transaction requirement was not satisfied. The District Court, relying upon United States v. Herring, supra, dismissed that argument because the same money was involved in both the claim for the income tax deficiency and the claim for estate tax. See Bowcut v. United States, 175 F. Supp. at 222.

On affirming the District Court, the Court of Appeals for the Ninth Circuit did not consider the single-transaction issue, as the Government appealed primarily on other grounds, which the court rejected, for denying equitable recoupment. See United States v. Bowcut, 287 F.2d at 656-657 & n.1 (9th Cir. 1961). Although the Court of Appeals did not consider whether the single-transaction requirement was satisfied, it did note that "In this case the taxpayer emphasizes that she is seeking to recover the overassessment of estate tax by recoupment from the very fund which, taken from the estate, had brought about the fact of overassessment." Id. at 656.

Years after United States v. Herring, supra, and United States v. Bowcut, supra, were decided, the Commissioner accepted the logic of these decisions and agreed in Rev. Rul. 71-56, 1971-1 C.B. 404, to apply equitable recoupment in these circumstances.[16] Despite the statement of administrative

---

[16]Rev. Rul. 71-56, 1971-1 C.B. 404, 470, revoked Rev. Rul. 55-226, 1955-1 C.B. 469, which ruled, citing Rothensies v.

(continued...)

position in Rev. Rul. 71-56, supra, respondent now argues that the single-transaction requirement is not met in the case at hand. In support of his position, respondent cites two Court of Claims cases, Wilmington Trust Co. v. United States, 221 Ct. Cl. 686, 610 F.2d 703 (1979), and Ford v. United States, 149 Ct. Cl. 558, 276 F.2d 17 (1960).

In Wilmington Trust Co. v. United States, supra, the Government argued equitable recoupment in a factual context similar to United States v. Herring, supra, and United States v. Bowcut, supra.[17] In this consolidated case, individual taxpayers, Carpenter and McMullan, had been engaged in forest and land management. Carpenter and McMullan incurred certain expenses in these activities which they properly deducted as ordinary and necessary business expenses. After Carpenter and McMullan had died, the Government determined deficiencies in their predeath income taxes, on the theory that the expenses were reductions in the amount of capital gain that Carpenter and McMullan each had realized on sales of timber. The executor of each decedent's estate paid the income tax deficiencies and deducted the income taxes paid as claims against the decedent's

_____

[16](...continued)
Electric Storage Battery Co., 329 U.S. 296 (1946), that equitable recoupment was not available in these circumstances because the single-transaction requirement was not satisfied.

[17]See Andrews, supra at 641.

gross estate.  Each estate was allowed these deductions for estate tax purposes.

Each estate also timely filed an administrative claim for refund of the predeath income taxes it had paid; the claims were denied, and each of the executors filed suit for refund of income tax in the Court of Claims.  If allowed, the refunds of the improperly paid income taxes would have resulted in estate tax deficiencies, as the earlier deductions allowed for the income tax claims against the estates would have been overstated.  After the period of limitations had expired for the Government to assert contingent claims against the estates, the Government amended its answer in the refund suits seeking under the doctrine of equitable recoupment to offset any resulting estate tax deficiencies against any income tax refunds the court determined to be due.

In both cases, the trial court judges, citing Herring v. United States, supra, Bowcut v. United States, supra, and Rev. Rul. 71-56, supra, found the single-transaction requirement had been satisfied, and recommended decision for the Government.  See Wilmington Trust Co. v. United States, 43 AFTR 2d 79-801, 79-1 USTC par. 9223 (Ct. Cl. Trial Div. 1979), revd. and remanded 221 Ct. Cl. 686, 610 F.2d 703 (1979); McMullan v. United States, 42 AFTR 2d 78-5723, 78-2 USTC par. 9656 (Ct. Cl. Trial Div. 1978).

The Court of Claims reversed the trial court and held for the taxpayers, stating that it was obliged by Rothensies v. Electric Storage Battery Co., 329 U.S. 296 (1946), to give the single-transaction requirement a narrow, inflexible interpretation. See Wilmington Trust Co. v. United States, 221 Ct. Cl. 686, 610 F.2d 703, 713 (1979). In finding that the single-transaction requirement was not satisfied, the court stated:

> The income tax refund is based upon the deductibility from ordinary income of the timber operations expense. The estate tax deficiency, however, exists because the estate deducted the additional income taxes reflecting those expenses that it paid and now is recovering. The recoupment claim thus arises from a different transaction (the reduced deduction from the estate tax) than the refund claims (the increased deductions from ordinary income). The government is not seeking to offset against each other two taxes levied on the same transaction, but to offset the tax on one transaction against the tax on another. * * * [Id. at 714.]

Thus, although the precipitating transaction was the deduction of the business expenses, the Court of Claims did not find this sufficient.[18]

In 1939, the taxpayers (children) in Ford v. United States, 149 Ct. Cl. 558, 276 F.2d 17 (1960), received stock in a closely

_____

[18]Academic commentators have almost invariably supported the Herring-Bowcut analysis over the conclusion of the Court of Claims. See Andrews, supra at 630-650; Willis, "Some Limits of Equitable Recoupment, Tax Mitigation, and Res Judicata: Reflections Prompted by Chertkof v. United States", 38 Tax Law. 625, 642-645 (1985).

held Brazilian coffee company from their deceased father's estate. For estate tax purposes, the executors reported the date-of-death fair market value of the stock at $11,857, which was adjusted upward to $23,715 in an audit of the estate tax return. Eight years later, in 1947, the children sold the stock for $258,948, and reported gain based upon the adjusted date-of-death value of the stock. The children then filed a timely claim for refund, asserting that the basis reported on the income tax returns was erroneous, and that the correct date-of-death value, and, therefore correct basis, was $331,418. See id. at 20.

The Government denied the refunds, on the basis of the date-of-death value reported in the estate tax return. The children filed suit in the Court of Claims, and at trial the court found that the actual fair market value of the stock at the date of the father's death was greater than the amount the children received in the 1947 sale. The Government did not advert that it might be entitled under the doctrine of equitable recoupment to offset the overpaid income tax against the earlier underpaid estate tax. However, on its own initiative the Court of Claims considered this issue, and on a 3-2 vote, held that the Government was not entitled to recoupment because the facts were not identical to those in Bull v. United States, 295 U.S. 247 (1935), and Stone v. White, 301 U.S. 532 (1937). The court found that although "The instant case comes fairly close to satisfying the recoupment

standards of the Supreme Court, * * * the teaching of Rothensies is that [the doctrine of equitable recoupment] is not a flexible doctrine, but a doctrine strictly limited, and limited for good reason." Ford v. United States, 276 F.2d at 23. The Court of Claims did not cite United States v. Herring, supra, and United States v. Bowcut, 287 F.2d 654 (9th Cir. 1961), and Rev. Rul. 71-56, supra, had not yet been issued.

The "good reason" referred to in Ford v. United States, supra, is the avoidance of the kind of staleness that the Supreme Court feared in Rothensies v. Electric Storage Battery Co., supra.

That concern does not apply in the case at hand. An automatic feature arising from the statutory relationship between the estate tax and the income tax is that once the value of the item included in the gross estate is finally determined, there is little or no factual issue with respect to the time-barred claim; hence there is no genuine issue of staleness. Furthermore, as the value improperly excluded from (or included in) the gross estate automatically is the same amount erroneously included in (or excluded from) gross income, neither the Commissioner nor the taxpayer is required to perform extensive additional recordkeeping or investigation with respect to the time-barred claim. Finally, unlike the overpaid excise taxes in Rothensies v. Electric Storage Battery Co., supra, which had been collected

for more than 2 decades and time barred for more than 15 years, in this case the open claim and the time-barred claim arose at approximately the same time.

In two recent decisions, Estate of Harrah v. United States, 77 F.3d 1122 (9th Cir. 1995), and Parker v. United States, 110 F.3d 678 (9th Cir. 1997), the Court of Appeals for the Ninth Circuit, the circuit to which any appeal in this case would lie, held that equitable recoupment was not available because, inter alia, on the facts in those cases no tax had been imposed twice on a single transaction. These cases are distinguishable from the case at hand.

In Estate of Harrah v. United States, supra, William F. Harrah died in 1978. His estate included 5,930,301 shares of common stock of Harrah's Inc. (Harrah's), which were valued at $13.325 per share in the estate tax return filed in 1980. In 1980, Harrah's was merged with Holiday Inns, Inc. (Holiday Inns). In this merger, the estate received $60,262,886 of cash, a $45 million promissory note executed by Holiday Inns, and convertible subordinated debentures of Holiday Inns with a face value of $105,262,800.

The amount of the taxable gain reported by the estate from the merger transaction depended upon the value of the promissory note and the convertible subordinated debentures and the basis of the Harrah's stock. On its 1980 income tax return, the estate

valued the promissory note at its face value, $45 million, and the convertible subordinated debentures at $84,210,240, on the basis of a 20-percent discount from their face value. Accordingly, the estate reported $110,451,865 of taxable gain on its return.

In 1982, the estate converted the debentures into Holiday Inns stock, which resulted in a basis of $16 per share. In this year, the Government determined a deficiency in estate tax, contending that the value of the Harrah's stock was $34.05 rather than $13.325 as reported on the return.

In 1983, the estate sold 679,400 shares of Holiday Inns stock for $25,159,789, and distributed 1,101,447 shares to a marital trust that was established by William F. Harrah's will, which also provided that the marital trust was to be funded from the estate. In 1984, the estate sold 58,200 shares of Holiday Inns stock for $2,620,487, and the marital trust sold all its shares for $58,177,080. In each of these sales, the $16 basis was used to compute the gain realized.

The estate filed a petition with this Court, contesting the Commissioner's determination of the value of the Harrah's stock that it reported on the estate tax return. In 1986, during the pendency of this litigation, the estate filed a timely income tax refund claim for 1980, on the ground that if it had undervalued the Harrah's stock, it had then overstated the gain it realized

in the 1980 merger with Holiday Inns.  At this time, the
Commissioner and the estate stipulated that for estate tax
purposes the Harrah's stock had a value of $19.41 per share.
Because of this stipulation, the value of the Harrah's stock was
not an issue on appeal.  See Estate of Harrah v. United States,
supra at 1125 n.4.

After the stipulation of the value of the Harrah's stock,
the estate filed a revised claim for refund of its 1980 income
taxes.  In 1988, the Government stated that it would oppose the
1980 refund claim on the grounds that the convertible
subordinated debentures were undervalued.  In 1989, the estate
filed suit in District Court for refund of $10,542,641 of income
tax paid for the 1980 taxable year.

At this time, the estate filed a claim for refund of income
taxes for the 1983 and 1984 taxable years, and the marital trust
filed a claim with respect to its 1984 taxable year.  The claims
filed for 1983 and 1984 were denied on the grounds that they were
untimely.  As a result of the denial of these claims, the estate
amended its refund suit in District Court to include its claims
for the 1983 and 1984 years.  The marital trust joined in this
action, and sought a refund for its 1984 taxable year.

The District Court applied the doctrine of equitable
recoupment and found the three refund claims were not barred by
the statute of limitations and also found that the proper

discount was 16.8 percent from the face value of the convertible subordinated debentures, rather than 20 percent as reported on the estate's 1980 income tax return.  The District Court's determination of the amount of the discount was accepted by the Government and was not an issue on appeal.  See Estate of Harrah v. United States, supra at 1125.

The only issue before the Court of Appeals for the Ninth Circuit was whether equitable recoupment would provide jurisdiction for the court to consider the estate's and trust's 1983 and 1984 time-barred claims for refund of the income tax paid on their sales of the Holiday Inns stock.  See Estate of Harrah v. United States, supra.

In deciding this issue, the Court of Appeals stated:

The "single transaction" requirement is but a reflection of the requirement that recoupment by the taxpayer on a time-barred claim is available only when it is asserted defensively against a timely claim by the government with respect to the same transaction.  A time-barred claim alone cannot provide jurisdiction to remove that bar.  [Id. at 1126.]

The Court of Appeals found that both the estate and marital trust were seeking to employ equitable recoupment offensively as the basis of jurisdiction, in a manner not countenanced by Bull v. United States, supra, and United States v. Dalm, supra.  See id. at 1126.  Further, the Court of Appeals found that the estate's and trust's attempts to supply the required jurisdiction by characterizing their efforts to reduce their 1983 and 1984

taxes as an assertion of equitable recoupment in respect to the open 1980 tax year must fail because consideration of the 1983 and 1984 years was barred by the statute of limitations, and the 1983 and 1984 sales of the Holiday Inns stock transactions were distinct from the Harrah/Holiday Inns merger transactions occurring in 1980.  Although the Court of Appeals found "a common thread of factual similarity" linking the 1983 and 1984 transactions with the 1980 transactions, it was not enough to provide jurisdiction.  See id. at 1126.

In Estate of Harrah v. United States, 77 F.3d 1122 (9th Cir. 1997), the Court of Appeals for the Ninth Circuit did not decide the issue now before us; the value of the stock in Harrah had been stipulated, and when the District Court determined the value of the convertible debentures, it consequently determined the amount of gain from the sale of that stock.  Unlike the stock at issue in this case, the convertible subordinated debentures were not items included in the estate for estate tax purposes. Furthermore, as the taxpayer's 1980 claim for refund of the overpayment of income tax realized in that sale was not time barred, the court did not have to consider the issue of whether the estate could recoup the excess income tax paid as a credit against the underpaid estate tax.  In short, the issue now before us is the issue that was not before the Court of Appeals.

In addition to these differences, the instant case is otherwise distinguishable from Estate of Harrah v. United States, supra. In our case, petitioner is not seeking to gain jurisdiction with a time-barred claim; we have jurisdiction because respondent determined a deficiency in petitioner's estate tax, issued a notice of deficiency, and petitioner filed timely a petition in response thereto. Moreover, petitioner is not attempting to reduce the income tax paid in the time-barred year; it is asserting that equitable recoupment is available to reduce the estate tax deficiency in the open year with the income tax on the same item that earlier was erroneously overpaid.

Most importantly, the 1983 and 1984 sales of the Holiday Inns shares by the estate and trust were many transactional generations removed from the transfer of the Harrah's stock to the estate and its sale of that stock in the merger. Neither the convertible subordinated debentures nor the Holiday Inns shares were items included in the estate. Furthermore, unlike the item in Bull v. United States, supra, and the item in the instant case, the Holiday Inns shares were not taxed once under the estate tax as corpus and again under the income tax as capital gain.

Finally, unlike the case at hand, where the only act of petitioner that contributed to the circumstance of double taxation was the erroneous valuation of those assets, see United

States v. Bowcut, 287 F.2d at 656 (the "only act of this taxpayer [the executrix] which contributed to the circumstance of a double tax upon the estate was her erroneous return of estate tax liability"), the taxpayer in Estate of Harrah v. United States, supra, engaged in several sales transactions with multiple valuation errors.

In Parker v. United States, 110 F.3d 678 (9th Cir. 1997), the appellants (sisters) were the two daughters of Eleanor Parker (mother), who died in 1971.  In 1972, the sisters sued Edward Allison (stepfather), alleging that he had abused his role as a fiduciary by embezzling funds from the mother's separate assets and from a testamentary trust created by the mother in 1958 for the sisters.  The suit was settled in 1975 with the stepfather agreeing in part to create a $325,000 settlement trust.  The income of the settlement trust was to be paid to the stepfather, and the remainder was to be paid to the sisters upon his death.

The stepfather died in 1985.  At the request of the executor of the stepfather's estate, and over the objections of the sisters, the trustee paid $90,000 in estate taxes owed by the stepfather's estate from the corpus of the settlement trust.  The sisters filed a timely claim for refund following the estate tax payment, which was rejected by the Government.  The sisters then filed suit for refund in the District Court.

In the District Court, the Government moved for summary judgment arguing that the sisters were not entitled to a refund because the value of the settlement trust, if not part of the stepfather's estate, was part of the mother's estate.[19]  The Government claimed--by way of asserted equitable recoupment--that taxes due from the mother's estate greatly exceeded the $90,000 that the sisters were trying to recover.  The District Court granted the Government's motion.

The sisters filed a timely motion for reconsideration in 1995, arguing for the first time that equitable recoupment did not apply because the case did not involve a single transaction or an identity of interest as required under the doctrine.  The District Court denied the sisters' motion for reconsideration, finding that equitable recoupment applied.  The District Court reasoned that the case involved a single transaction, the taxation of the settlement trust, and that the requisite identity of interest was present because the parties seeking the refund were the same parties who received the benefit of a larger inheritance when the mother's estate was not taxed.

---

[19]The District Court found that at the time of her death, the mother had a cause of action against the stepfather for his fraudulent conveyances.  By converting the mother's asset (her cause of action) into a sum certain by settling the claim, that sum was therefore includable in the mother's gross estate.  See Parker v. United States, 110 F.3d 678, 681 (9th Cir. 1997).

On appeal, the Court of Appeals for the Ninth Circuit accepted the Government's concession that the settlement trust had been improperly included in the stepfather's estate. However, the Court of Appeals concluded that even if the mother's claim against the stepfather had been includable in her estate, the Government's claim against her was time barred and that bar could not be circumvented by application of the doctrine of equitable recoupment because this case involved two or more taxpayers, two or more transactions, no inconsistent treatment between them, and no equitable reason to deny the sisters their refund.

In concluding that the District Court erroneously combined two or more separate transactions and analyzed them under the guise of taxation of the trust, the Court of Appeals for the Ninth Circuit observed that when the Supreme Court declared in Rothensies v. Electric Storage Battery Co., 329 U.S. at 299, that equitable recoupment

> "permit[s] a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." * * * This pronouncement, however, does not mean that courts should lump together related, but nonetheless separate transactions so that the facts of a case can be viewed as "one transaction as a whole." * * * [Parker v. United States, supra at 684; citation omitted.]

A number of factors contributed to the Court of Appeals' decision in Parker to treat the sisters' matter as involving more

than a single transaction. First, neither the mother nor her estate was a party to the settlement trust created 4 years after the mother's death. Second, it was not the creation of the trust that gave rise to the tax liability that the Government claimed existed with respect to the mother's estate. The mother's estate tax liability existed because she possessed a valuable right when she died, the claim against the stepfather for conversion, embezzlement, and breach of fiduciary duty. The Court of Appeals for the Ninth Circuit reasoned that these "transactions" (the mother's death or the stepfather's tortious conduct giving rise to the mother's chose in action) were undeniably separate from the event giving rise to the sisters' refund claim--the stepfather's death and the concededly erroneous taxation of his estate. See Parker v. United States, supra at 684. While the Court of Appeals conceded that the creation and taxation of the settlement trust were in some ways related to these various transactions, it found that any factual and arithmetic link between them was insufficient to enable the Government to succeed in its claim for recoupment. See id.

In contrast to Parker, in which the mother was not even a party to the creation of the settlement trust, in the case at hand, petitioner both undervalued and sold the shares of stock that gave rise to the estate tax deficiency, and the same undervaluation and sale automatically resulted in petitioner's

realization of excess income, and the payment of excess income tax. Therefore, unlike the taxpayer in <u>Rothensies v. Electric Storage Battery Co.</u>, <u>supra</u>, and the Government in <u>Parker v. United States</u>, <u>supra</u>, petitioner is not attempting to lump distinct transactions separated by many years into a single taxable event.[20]

Any appeal in this case would lie to the Court of Appeals for the Ninth Circuit, and we are bound by any decision of that court squarely in point. See <u>Golsen v. Commissioner</u>, 54 T.C. at 756-757. However, the Court of Appeals did not consider the precise issue now before us, and both <u>Estate of Harrah v. United States</u>, 77 F.3d 1122 (9th Cir. 1995), and <u>Parker v. United States</u>, 110 F.3d 678 (9th Cir. 1997), are otherwise distinguishable on their facts; <u>Golsen</u> does not apply. See <u>id.</u>

Here, there is more than a mere logical relationship or factual and arithmetical link between the tax paid on the gain realized on the shares sold by petitioner and the valuation of those same shares for the estate tax. Because of the statutory

---

[20]When the taxpayer in <u>Rothensies v. Electric Storage Battery Co.</u>, 329 U.S. 296 (1946), brought suit in 1943, the claim pleaded as recoupment was for taxes collected over 20 years before and barred by statute for over 16 years. See <u>id.</u> at 302-303. Similarly, in <u>Parker v. United States</u>, 110 F.3d 678 (9th Cir. 1997), the settlement trust was created in 1975, 4 years after the mother's death, and it was a decade later before the Government "roused to action" when the sisters sought the refund to which they were entitled. See <u>id.</u> at 685. In the instant case, the stock was sold by petitioner in the year immediately following decedent's death.

relationship between sections 2031 and 1014, there is automatic causality between the fair market value of shares reported by the estate and the gain recognized on the sale of the same property. The purpose of section 1014 is, in general, to provide a basis for property acquired from a decedent that is equal to the value placed upon such property for purposes of the Federal estate tax. See sec. 1.1014-1(a), Income Tax Regs. Once the proper date-of-death fair market value is established by judicial process and made subject to the estate tax, it is automatic, under the facts of this case, that gain has been improperly subjected to the income tax. Accordingly, we find that the single transaction, item, or taxable event requirement is met.

3. Inconsistent Treatment

Both the estate and the income tax depend upon the same matter of fact--the fair market value of the shares at the date of decedent's death. Accordingly, the value existing at decedent's death is taxed only once. See secs. 1014, 2031.

With respect to this issue in Parker v. United States, supra, the Court of Appeals for the Ninth Circuit compared the facts of that case, in which there was an erroneous inclusion in the stepfather's estate and an erroneous failure to assess the full value of the mother's gross estate, with Bull v. United States, 295 U.S. 247 (1935), in which the same amount of partnership profits was taxed as both corpus and income. See

Parker v. United States, supra at 685.  In Parker, the court
reasoned that while the Government's failure to determine a
deficiency in the mother's estate on the basis of the value of
the remainder interest, and the inclusion of the corpus in the
stepfather's estate were both wrong, the erroneous tax treatment
of the separate estates was not the result of inconsistent
theories of taxation as required under the doctrine.  See id.

The instant case is clearly distinguishable from Parker v.
United States, supra.  In this case, the same item has been
subjected to taxation under inconsistent theories, as corpus
under the estate tax and as capital gain under the income tax.
We conclude that this requirement is satisfied.  See Bull v.
United States, supra at 261; see also Boyle v. United States, 355
F.2d at 236 (treatment of the same fund as both corpus and income
provided the necessary inconsistency of treatment).


4.  Identity of Interest

The courts that have found equitable recoupment available in
the cases before them have not required absolute identity of
interest between the payor of the erroneous overpayment (or
underpayment where the Government asserts recoupment) and the
recipient of the recoupment.  However, if the subject transaction
involves two or more taxpayers, equitable recoupment will not be

available unless a sufficient identity of interest exists so that the taxpayers should be treated as one. See Parker v. United States, supra at 683.

In the instant case, we find that there is sufficient identity of interest between petitioner and the payor of the tax that petitioner seeks to recoup. Decedent's will provides that the estate taxes are to be paid from the residue of the estate, and petitioner sold stock included in that residue to pay its estate tax liability. The gain realized on the sales passed through to the residuary legatee, March, who reported the gain and paid the income tax due. Any adjustment through recoupment will benefit only the residuary legatee, and any distinction of legal entities would be purely artificial. See Stone v. White, 301 U.S. 532 (1937) (identity of interest between the trust which paid the tax and the beneficiary who had received the income); Estate of Vitt v. United States, 706 F.2d 871, 875 n.3 (8th Cir. 1983) (sufficient identity of interest between the separate estates of deceased spouses, because the same parties detrimentally affected by the overpayment of estate tax would receive the proceeds from recoupment); Boyle v. United States, supra at 236 (sufficient identity of interest between estate that paid estate tax on accumulated dividend arrearages included in corpus and all the beneficiaries of the estate who later were paid the dividends and liable for the income tax thereon); United

States v. Herring, 240 F.2d 225, 228 (4th Cir. 1957) (sufficient identity between decedent and estate); Bowcut v. United States, 175 F. Supp. 218, 221-222 (D. Mont. 1959) (same).

To reflect the foregoing,

Decision will be entered

under Rule 155.


Reviewed by the Court.

GERBER, WELLS, COLVIN, HALPERN, BEGHE, CHIECHI, LARO, FOLEY, VASQUEZ, GALE, THORNTON, and MARVEL, JJ., agree with this majority opinion.

BEGHE, J., concurring: Having joined the majority opinion, I write separately to respond to Judge Chabot's argument that the structure of our deficiency jurisdiction prohibits us from applying equitable recoupment to redetermine petitioner's estate tax deficiency.

In Judge Chabot's view, the sole issue for decision in the case at hand, as he argued in Estate of Mueller v. Commissioner, 101 T.C. 551, 565-566 (1993) (Mueller II), is the valuation of the Savings and Willits shares included in decedent's gross estate. Inasmuch as we have performed that task in Branson I, the dissent contends that nothing remains for us to do to redetermine petitioner's estate tax deficiency. I disagree: Our valuations also, as a practical matter, have redetermined a corresponding increase in the section 1014(a) basis of the shares, resulting in the residuary legatee's time-barred overpayment of tax on the sale of the shares.

Working with the definition of "deficiency" in section 6211(a), there is a way in which the residuary legatee's overpayment is taken into account in computing petitioner's estate tax deficiency. While the approach I suggest requires an element of fictive or "as if" thinking in applying the statute, I believe the grounds for applying equitable recoupment to the facts of this case support an interpretation of section 6211(a)

that allows the residuary legatee's overpayment to be taken into account in determining petitioner's estate tax deficiency.

As Judge Chabot points out, the Tax Court's task in this case is to redetermine petitioner's estate tax deficiency, and "deficiency" is a term of art in Federal taxation that has special significance for our jurisdiction.  See Murphree v. Commissioner, 87 T.C. 1309, 1311 (1986); Martz v. Commissioner, 77 T.C. 749, 754 (1981); Hannan v. Commissioner, 52 T.C. 787, 791 (1969).  Section 6211(a) defines "deficiency" as follows:

> SEC. 6211 DEFINITION OF A DEFICIENCY.
>
> (a) In General.-- For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 41, 42, 43, and 44 the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44 exceeds the excess of--
>
>> (1) the sum of
>>
>>> (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
>>>
>>> (B) the amounts previously assessed (or collected without assessment) as a deficiency, over--
>>
>> (2) the amount of rebates, as defined in subsection (b)(2), made.

In other words, the deficiency (d) equals the correct tax imposed (t) less the total tax shown on the return (s) plus prior

assessments (a) less rebates (r).[1]  Under this definition, a

deficiency in estate tax will generally result if a taxpayer is

found to have undervalued property included in the gross estate

because an increase in the value of included property will

increase the amount of tax imposed by subtitle B.  Just as the

amount of the deficiency is affected by the amount of tax imposed

under subtitle B, it can also be affected by "amounts previously

assessed (or collected without assessment) as a deficiency", sec.

6211(a)(1)(B), see sec. 1.6211-1(e), Income Tax Regs., and

rebates made, see sec. 6211(a)(2).

In applying equitable recoupment within the statutory scheme

of section 6211(a), we are in effect holding, after concluding

that the residuary legatee paid too much income tax on

petitioner's gain on the 1992 sales of Willits and Savings

shares, that petitioner has been assessed an additional amount of

estate tax within the meaning of section 6211(a)(1)(B).  In so

doing, we treat the income tax overpayment as if it were a

partial assessment of the estate tax deficiency.  The residuary

legatee's income tax overpayment thereby has the effect of

reducing the amount of the estate tax deficiency, not as a below-

---

[1] Expressed as a mathematical formula:

$$d = t - (s + a - r).$$

The formula can also be expressed as follows:

$$d = (t - s) - (a - r).$$

the-line subtraction from the deficiency, but as an above-the-line (negative) element of the deficiency itself.  See sec. 6211(a)(1)(B).

There is a long and honorable tradition of using legal fictions to overcome the rigidity of the law in order to make the legal system function fairly.[2]  A legal fiction is a falsehood that is deemed to be true for limited purposes designed to bridge the gap between concept and reality.[3]  "A doctrine which is plainly fictitious must seek its justification in considerations of social and economic policy; a doctrine which is nonfictitious

---

[2] See <u>ACLU of Mississippi, Inc. v. Finch</u>, 638 F.2d 1336, 1340 n.7 (5th Cir. 1981), and texts cited.  This case and these texts conclude that legal fictions can be useful and justified if employed with the understanding of producer and consumer of their character as such.  See also <u>United States v. Dalm</u>, 494 U.S. 596, 612-623 (1990) (Stevens, J., dissenting), discussed <u>infra</u> pp. 7-8.

[3]     In effect, when we engage in a fiction, we
    redefine reality to comport with existing law as
    a method of changing the law to meet new realities
    * * *.  This method of adapting the law to changing
    circumstances and perceptions is saved from absurdity
    by its underlying rationality.  * * * when used
    properly the legal fiction is a rule of law embodying
    an unconcealed falsehood at one level and a deeper
    truth at another more important level.  The falsehood
    is often made necessary because of the pre-existing
    structure of the law, and is justified (if it is
    justified) by the deeper underlying truth contained
    within the falsehood.

Miller, "Liars Should Have Good Memories:  Legal Fictions and the Tax Code", 64 U. Colo. L. Rev. 1, 26 n.109 (1993).

often has spurious self-evidence about it."  L. Fuller, Legal Fictions 71 (1967).[4]

The concepts of tax "deficiency" and "underpayment" are themselves legal constructs that amount to fictions, inasmuch as neither of them purports to be the amount of a petitioner's remaining obligation to pay tax; they stand in somewhat the same relationship to such obligation as shadows do to the three-dimensional object.  However, once a deficiency determined by the Commissioner (or redetermined by the Tax Court) is assessed, the deficiency becomes a legal obligation that the Commissioner can collect, and reality painfully intrudes.

By allowing the residuary legatee's overpayment to be taken into account in determining petitioner's estate tax deficiency, we do no more than give effect to the accepted notions that "the rule of equitable recoupment permits recovery of an otherwise barred claim by resort to the fiction that the overpayment is a credit or defense against a later asserted tax liability for a year open to suit" and that "The doctrine of equitable recoupment utilizes the fiction of a tax credit or defense to liability for a year open to suit to avoid violation of the statutory scheme providing for finality of tax determinations."  Holzer v. United

---

[4] Originally published in slightly different form in three parts in 25 Ill. L. Rev. 363, 513, 865 (1930-31).

<u>States</u>, 250 F. Supp. 875, 877-878 (E.D. Wis. 1966), affd. per curiam 367 F.2d 822 (7th Cir. 1966).

"[T]he Supreme Court has explicitly and repeatedly stated that it is sometimes appropriate to interpret statutes in a manner inconsistent with their literal language."  Zelenak, "Thinking About Nonliteral Interpretations of the Internal Revenue Code", 64 N.C. L. Rev. 623, 631 (1986).  Zelenak notes, <u>id.</u> at 624, that in the preceding 4 years the Supreme Court had decided at least four tax cases by adopting on confirming a nonliteral interpretation of the Code.[5]

Similarly, the "two wrongs make a right" character of equitable recoupment, see Willis, "Some Limits of Equitable Recoupment, Tax Mitigation, and Res Judicata:  Reflections Prompted by <u>Chertkof v. United States</u>," 38 Tax Law. 625 (1985), emphasizes that "Recoupment, rather than extending the statute of limitations to correct a perceived injustice, permits a wronged party to recoup the loss against a sum still open to litigation." <u>Id.</u> at 633.  In so doing, recoupment uses the legal fiction that the recoupment claim is an element in the computation of the tax subject to the timely claim, rather than the time-barred tax. The "two wrongs make a right" notion signifies that where an

---

[5] Citing and discussing <u>Paulsen v. Commissioner</u>, 469 U.S. 131 (1985); <u>Bob Jones Univ. v. United States</u>, 461 U.S. 574 (1983); <u>Commissioner v. Tufts</u>, 461 U.S. 300 (1983); <u>Hillsboro Natl. Bank v. Commissioner</u>, 460 U.S. 370 (1983).

earlier matter has received erroneous tax treatment, "[recoupment] does not correct the wrong, as does the mitigation statute, but instead causes a later matter to be equally wrong in the opposite direction."  Id.

As Justice Stevens observed in his dissent in United States v. Dalm, 494 U.S. 596, 612-623 (1990), the Supreme Court in Bull v. United States, 295 U.S. 247 (1935), could have taken the strict view that the statute of limitations barred the taxpayer's claim, but instead "avoided that unjust result" by construing the plaintiff's rights in a Federal tax refund suit by reference to those of a defendant, thereby proceeding "under * * * the presumption that for every right there should be a remedy." United States v. Dalm, supra at 616-617.  Acknowledging that treating a plaintiff like a defendant "so as to permit, in effect, the equitable tolling of the limitations period" was perhaps "an unusually flexible treatment of legal categories," Justice Stevens observed that such treatment was "nothing more than the necessary expression of an exception to a generally appropriate definition", an exception that had received the status of a legal rule under Bull.  Id. at 618.  See Tierney, "Equitable Recoupment Revisited: The Scope of the Doctrine Revisited in Federal Tax Cases after United States v. Dalm," 80 Ky. L.J. 95, 131-165 (1992).

In Mueller II, we opined that we have authority to apply equitable recoupment in a case over which we have jurisdiction; in Estate of Mueller v. Commissioner, 107 T.C. 203 (1996) (Mueller III), we held, consistent with the view of the majority in United States v. Dalm, supra, that equitable recoupment is properly confined to its traditional role as an affirmative defense.[6]  Having held in the case at hand that the requirements of equitable recoupment have been satisfied, our application of the doctrine does no more violence to the structure of section 6211(a) than the availability of equitable recoupment in the refund forums does to the Internal Revenue Code as a whole.

---

[6] This observation serves to distinguish equitable recoupment and the case at hand from Commissioner v. Lundy, 516 U.S. 235 (1996).

LARO, J., concurring:  The United States Tax Court is a court of law that, like the United States District Courts, has the authority to apply equitable principles such as equitable recoupment.  The majority holds as much, and I agree.  I write separately to emphasize the fact that this Court, although different from District Courts in a few regards, the most obvious of which is that District Courts were created under Article III of the U.S. Constitution whereas this Court was created under Article I of the U.S. Constitution, is a court of law that has the authority to apply all of the judicial powers of a District Court.

 This Court's predecessors, namely, the Board of Tax Appeals and the Tax Court of the United States, were not courts of law, and they did not possess the judicial powers of a District Court.  This Court's predecessors were independent agencies in the executive branch of the Federal Government, and, as such, their powers were limited to those powers conferred upon them by the executive branch.  See Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418 (1943); Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 725 (1929).  The fact that this Court's predecessors were executive agencies and not courts of law made them fundamentally different from the District Courts.  The fact that this Court's predecessors were executive agencies and not courts of law made them fundamentally different from this Court.

Following the passage of the Tax Reform Act of 1969 (1969 Act), Pub. L. 91-172, sec. 951, 83 Stat. 730, the United States Tax Court is the functional equivalent of a District Court.  See sec. 951 of the 1969 Act, 83 Stat. 730.  See also Freytag v. Commissioner, 501 U.S. 868, 890-891 (1991).  Through the 1969 Act, Congress changed the status of this Court from an "independent agency in the Executive Branch of the Government" to a "court of record" "established * * * under Article I of the Constitution of the United States".  See sec. 7441 before and after amendment by the 1969 Act; see also Freytag v. Commissioner, supra at 890-891.  Congress established the United States Tax Court through a constitutionally permissible exercise of its Article I powers.  See Freytag v. Commissioner, supra. The United States Tax Court, as established by Congress under the 1969 Act, sits as a District Courtlike tribunal that "exercises a portion of the judicial power of the United States * * *. * * * to the exclusion of any other function".  Id. at 891.  This Court's judicial power allows the Court to decide cases without undue influence from either the executive or legislative branch. See id. at 890-891; Roberts v. Commissioner, 175 F.3d 889 (11th Cir. 1999); see also Burns, Stix Friedman & Co. v. Commissioner, 57 T.C. 392, 395 (1971), wherein the Court stated:

> It is clear from the statutory language and the Senate committee report (S. Rept. No. 91-552, 91st Cong., 1st Sess., p. 302, 1969-3 C.B. 614) that Congress removed

the Tax Court from the Executive Branch and established it as an article I court primarily for the purpose of recognizing its status as a judicial body and disposing of any problems that its status as an executive agency sitting in judgment on another executive agency might pose.

This Court's District Courtlike status means that the Court's decisions are subject to review only by a Federal appellate court. See sec. 7482(a) ("The United States Courts of Appeals * * * shall have exclusive jurisdiction to review the decisions of the Tax Court * * * in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury").

Appellate courts have repeatedly applied the law that preceded the 1969 Act to hold that the predecessors of the United States Tax Court were not courts of law and, more importantly, that these predecessors lacked judicial powers. In Lasky v. Commissioner, 235 F.2d 97 (9th Cir. 1956), affd. per curiam 352 U.S. 1027 (1957), for example, the Court of Appeals for the Ninth Circuit held that the Tax Court of the United States, unlike a District Court, was without authority to vacate a final decision. The Ninth Circuit reasoned that the Tax Court of the United States was "not a court at all but merely an administrative agency". Id. at 98; accord Swall v. Commissioner, 122 F.2d 324 (1st Cir. 1941); Sweet v. Commissioner, 120 F.2d 77 (1st Cir. 1941). Other appellate courts had ruled similarly, applying the same reasoning. See, e.g., White's Will v.

Commissioner, 142 F.2d 746 (3d Cir. 1944), affg. 40 B.T.A. 664 (1939); Monjar v. Commissioner, 140 F.2d 263 (2d Cir. 1944), affg. an unreported Order of the Board of Tax Appeals; Denholm & McKay Co. v. Commissioner, 132 F.2d 243 (1st Cir. 1942), vacating 41 B.T.A. 986 (1940) and reinstating 39 B.T.A. 767 (1939); see also Helvering v. Northern Coal Co., 293 U.S. 191 (1934).

These prior cases do not address the current status of this Court as a court of law that performs exclusively judicial functions.  None of these cases, therefore, has any bearing on the types of powers that this Court is authorized to exercise in performing our judicial functions.  The Supreme Court acknowledged so much in Freytag when the Court held that Congress constitutionally established the United States Tax Court as a court of law that "[exercises] judicial power and perform[s] exclusively judicial functions" and, in so holding, rejected the Commissioner's argument that the 1969 Act "simply changed the status of the Tax Court within * * * [the executive] branch." Freytag v. Commissioner, supra at 885, 892.  It naturally follows from Congress' elevation of this Court to an "exclusively judicial" court that this Court possesses all of the inherent powers of the judiciary and that this Court's legal and equitable powers are diametrically different from this Court's executive agency predecessors which wielded executive powers only.

The Supreme Court has recently stated in dictum that the United States Tax Court lacks "general equitable powers".  See Commissioner v. McCoy, 484 U.S. 3, 7 (1987) (per curiam).  When taken in context, this statement is not remarkable.  Nor is it inconsistent with the view of this Court as to our ability to exercise District Courtlike equitable powers.  The context of the Supreme Court's statement in McCoy indicates clearly that the Court was merely applying the well-settled rule that no court of law may ignore the express intent of Congress as to the imposition of interest and penalties.  See id.; see also Flight Attendants Against UAL Offset v. Commissioner, 165 F.3d 572, 578 (7th Cir. 1999) ("In context, the Supreme Court's dictum in Commissioner v. McCoy, 484 U.S. 3, 7, 98 L. Ed. 2d 2, 108 S. Ct. 217 (1987) (per curiam), that the Tax Court lacks 'general equitable powers' means only that the Tax Court is not empowered to override statutory limits on its power by forgiving interest and penalties that Congress has imposed for nonpayment of taxes--but then no court is, unless the imposition would be unconstitutional.").  In fact, the Court made no mention of McCoy when it decided Freytag 4 years later.

In sum, Congress, through the 1969 Act, elevated the status of this Court to a court of law, and the Supreme Court in Freytag held that Congress' action was constitutional.  As a Federal court of law, this Court naturally possesses the inherent powers

of any other Federal court of law, e.g., the Federal District Courts, including the power to apply equitable principles such as equitable recoupment.  Because the Court holds as much today, I concur in our decision.

PARR, FOLEY, VASQUEZ, THORNTON, and MARVEL, JJ., agree with this concurring opinion.

CHABOT, J., dissenting:  The majority hold that this Court has authority to apply the doctrine of equitable recoupment and "that petitioner is entitled to recoup the residuary legatee's excessive payment of income tax against the estate tax deficiency."  Supra majority op. pp. 2-3.  For the reasons set forth in my dissent in Estate of Mueller v. Commissioner, 101 T.C. 551, 565-571 (1993) (Mueller II), I respectfully dissent.

The majority opinion and Judge Laro's concurring opinion do not attempt to deal with the substance of that dissent; instead, they focus on this Court's status as a Court, as a result of the amendments made by the Tax Reform Act of 1969 (TRA '69), Pub. L. 91-172, sec. 951, 83 Stat. 730.  I am well aware of the text of TRA '69, its legislative history, and the Congress' intentions.  I am satisfied that there is nothing in the materials considered by or generated by the Congress in connection with TRA '69 that speaks to the issue of equitable recoupment; however, it is clear that the Congress did not intend to make this Court an "Article III court".

Firstly, clearly, this Court is a court.

Secondly, this Court is not a Federal District Court.  This Court is a Federal trial court, like the District Courts, and must abide by the same Federal Rules of Evidence.  However this Court has statutory authority to prescribe its own Rules of Practice and Procedure (sec. 7453), which in many respects are

different from the Federal Rules of Civil Procedure. This Court has statutorily prescribed deficiency jurisdiction, which the District Courts do not have; the District Courts have refund jurisdiction, which this Court does not have (except where an overpayment is developed in a case that began as a deficiency case, or in a "TEFRA partnership" or S corporation case). This Court has developed the "Lawrence doctrine", modified by the "Golsen doctrine", as described in Lardas v. Commissioner, 99 T.C. 490, 493-495 (1992), which does not have a practical counterpart in the District Courts. This Court's burden of proof rules in deficiency cases differ in some respects from those applicable in refund cases in the District Courts. See in this connection Helvering v. Taylor, 293 U.S. 507, 514 (1935). As to other differences between this Court and the District Courts, see Commissioner v. Lundy, 516 U.S. 235, 244-245, 252 (1996).

Thirdly, as to the critical dispute in the instant case, this Court and the District Courts differ in their statutory powers in such a way that equitable recoupment fits what the District Courts do (decide directly how much, including interest, the Government must pay to the taxpayer, or vice versa) and does not fit what this Court does, redetermine the amount of the deficiency, if any, which is merely one factor in how much must be paid.

Fourthly, nothing in the concepts of a "court", or a "court of law", makes equitable recoupment an essential characteristic of a court, or of a court of law.

My position remains that we are to resolve those matters which affect the amount of the estate tax deficiency to be set forth on the decision document we enter in the instant case. Equitable recoupment does not affect any of the elements of the deficiency, as statutorily defined, and so does not affect the decision we enter. Judge Beghe's concurring opinion does deal with this Court's deficiency jurisdiction, which is the only jurisdiction that brings the instant case before us. Judge Beghe's concurring opinion suggests a route by which the square peg of recoupment could be squeezed into the round hole of the statutory definition of deficiency.[1]

However, several aspects of this suggested route remain to be paved. Firstly, "deficiency" and "underpayment" are defined terms. Secs. 6211, 6664(a). They are not legal fictions. The amount, if any, that a taxpayer may have to pay to the Government may well be different from the amount of the deficiency or any underpayment.

Secondly, the Supreme Court has recently indicated that, as to the Tax Court, the statute of limitations (the major

---

[1] This imagery is generally thought to have originated in Sidney Smith's reference to "a square person has squeezed himself into the round hole." Sketches of Moral Philosophy (1850).

impediment that equitable recoupment is designed to circumvent) must be given a strict application, and the equities are unavailing. See Commissioner v. Lundy, 516 U.S. 235 (1996). Thus, this Court was barred from holding that Lundy overpaid his income taxes even if his claim for refund would have been timely in a District Court. See id. at 251-253 (majority op.), 253-254, 263 (Thomas, J., dissenting). Also, Lundy lost even though it was clear that Lundy and his wife had substantially overpaid their income taxes. See id. at 237. Lundy did not involve the staleness, missing documents, and faded memories that statutes of limitations are generally established to guard against. The majority of the Supreme Court determined that there was no room for legal fictions suggested by Justices Thomas and Stevens, the Court of Appeals for the Fourth Circuit, or Lundy's counsel, to correct this obvious injustice, and the Government was permitted to hold onto the Lundys' overpaid taxes solely because of the text of the then-applicable statute of limitations. Of course, Lundy's situation does not fit into the current mold of equitable recoupment. The relevance of Lundy to our discussion is the Supreme Court's focus on the details of statutory grants and limitations of power and jurisdiction, and that Court's reluctance to modify the strictness of the statute even to correct an obvious injustice.

Thirdly, Judge Beghe's concurrence relies on the analysis of equitable recoupment in Justice Stevens' dissent in United States v. Dalm, 494 U.S. 596, 612-623 (1990).  Although much understanding may be gleaned from a distinguished jurist's dissent, the fact remains that the dissent is what the Supreme Court's majority rejected.

COHEN and WHALEN, JJ. agree with this dissent.