T.C. Memo. 2018-55

UNITED STATES TAX COURT

EMERY CELLI CUTI BRINCKERHOFF & ABADY, P.C., Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22886-09L.

Filed April 24, 2018.

<u>Usman Mohammad</u>, for petitioner.

<u>Shawna A. Early</u>, for respondent.

MEMORANDUM OPINION

GALE, <u>Judge</u>: Pursuant to section 6330(d)(1),[1] petitioner Emery Celli Cuti

Brinckerhoff & Abady, P.C. (Emery PC) seeks review of respondent's

---

[1]All section references are to the Internal Revenue Code of 1986, as amended, all Rule references are to the Tax Court Rules of Practice and Procedure, and all dollar amounts have been rounded to the nearest dollar. (Figures may differ because of rounding.)

[*2] determination to sustain a proposed levy to collect unpaid employment tax, interest, and penalties for the quarterly period ended March 31, 1999 (1Q 1999). The issues for decision are: (1) whether Emery PC is entitled to offset its unpaid employment tax liability for 1Q 1999 with the employment tax that a related taxpayer overpaid for the same quarter and (2) whether Emery PC is liable for additions to tax under section 6651(a)(1) and (2) for failure to timely file an employment tax return and pay tax and a penalty under section 6656(a) for failure to deposit employment tax.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Emery PC's principal place of business was in New York at the time it filed its petition.

I.     The firm's structure and operations[2]

Commencing on May 5, 1998, four attorneys--Richard Emery, Andrew Celli, Matthew Brinckerhoff, and Jonathan Abady--practiced together in a firm

---

[2]The findings in Part I are based upon materials Emery PC submitted to the settlement officer conducting its collection due process (CDP) hearing. Although these materials were not considered by the settlement officer, we conclude, as more fully discussed infra pp. 21-22, that they are part of the administrative record.

[*3] named Emery, Celli, Brinckerhoff & Abady, LLP (Emery LLP), a limited liability partnership. Effective January 1, 1999, Mr. Celli ceased to be a partner and John Cuti was admitted as a partner in Emery LLP. For the first 15 days of January, the firm continued to conduct its operations through the Emery LLP entity, but on January 16, 1999, reflecting the change in the composition of its members, the firm commenced operations through a new entity, a professional corporation organized as a subchapter C corporation[3] named Emery Cuti Brinckerhoff & Abady, P.C. (Emery PC).[4] Mr. Emery owned 50% of Emery PC's common stock and Messrs. Cuti, Brinckerhoff, and Abady each owned approximately 17% of the stock. As of January 16, 1999, the firm ceased conducting ongoing operations through Emery LLP, but that entity was maintained for the purpose of collecting revenues, satisfying liabilities, and distributing profits related to past work. Emery PC conducted the firm's ongoing operations from that point forward through the end of 1999. Emery LLP paid

---

[3] A copy of Emery PC's Form 1120, U.S. Corporation Income Tax Return, filed for 1999, is in the administrative record.

[4] Emery PC's name at the close of 1Q 1999 was Emery Cuti Brinckerhoff & Abady, P.C. It changed its name to Emery Celli Cuti Brinckerhoff & Abady, P.C., on January 13, 2003, to reflect the return of Mr. Celli (after his service in the Office of the Attorney General of the State of New York).

[*4] wages to seven employees totaling $13,451 for 1Q 1999 yet made employment tax deposits totaling $26,047 for that period.

II.     Payment of employment taxes during 1999[5]

The seven employees who were paid $13,451 in wages by Emery LLP for the first two weeks of 1Q 1999 received the balance of their wages during that quarter from Emery PC.  Emery PC paid to these employees, plus an eighth employee hired in February 1999, wages totaling $45,037 during 1Q 1999.  Emery PC's general ledger records five employment tax deposits made with the Electronic Federal Tax Payment System during 1Q 1999, with the first one dated January 31, 1999.  However, the law firm's payroll services provider that made the five employment tax deposits erroneously submitted them under Emery LLP's employment identification number (EIN).

---

[5]The bulk of the findings in Parts II and III are based on evidence introduced at the trial in this case, including the general ledgers of Emery LLP and Emery PC for 1Q 1999, respondent's account transcripts for the two entities covering this period, and the testimony of Emery PC's accountant.  The trial evidence also included Emery PC's Form W-3, Transmittal of Wage and Tax Statements, and Forms W-2, Wage and Tax Statement, for 1999, whereas the corresponding forms for Emery LLP for that year were included in the submission made to the settlement officer.  As discussed infra p. 30, we conclude that Emery PC is entitled to de novo review, on the basis of the evidence presented at trial, with respect to its claim for abatement of the additions to tax and penalty at issue.

[*5]   A comparison of Emery PC's general ledger and respondent's account transcript for Emery LLP's 1Q 1999 demonstrates the error.  For 1Q 1999 Emery PC's general ledger reflects five entries for disbursements of employment tax deposits totaling $21,706 after January 15, 1999, as follows:

| Date | Deposit |
|------|---------|
| Jan. 31, 1999 | $4,533 |
| Feb. 15, 1999 | 4,310 |
| Feb. 28, 1999 | 4,276 |
| Mar. 15, 1999 | 4,265 |
| Mar. 31, 1999 | 4,322 |
| Total | 21,706 |

The figures for the deposits in Emery PC's general ledger are essentially identical[6] to the figures recorded a few days later on respondent's account transcript for Emery LLP and credited as employment tax deposits made by that entity.[7] Respondent's account transcript indicates that Emery LLP made these five deposits, plus an earlier deposit of $4,341 on January 21, 1999, or six employment

---

[6]There is a 4 cent discrepancy between the employment tax deposit recorded in Emery PC's general ledger for January 31, 1999, and the corresponding credit reflected in respondent's account transcript for Emery LLP.

[7]Respondent's account transcript for Emery LLP's 1Q 1999 records that respondent assessed the employment taxes as reported by Emery LLP on May 31, 1999.

**[*6]** tax deposits totaling $26,047 during 1Q 1999. However, respondent's account transcript for Emery PC's 1Q 1999 records no employment tax deposits.

Respondent's account transcript for Emery LLP's 1Q 1999 records that Emery LLP timely filed a Form 941, Employer's Quarterly Federal Tax Return, reporting an employment tax liability for that quarter of $26,047--that is, the total of the employment tax deposits recorded for it. Emery PC did not timely file a Form 941 for 1Q 1999; it filed one on March 24, 2006, after having been contacted by respondent. Respondent's account transcripts for Emery LLP's three remaining 1999 quarters indicate that Emery LLP filed no Forms 941 and reported no employment tax liabilities for those quarters. Respondent's account transcripts for Emery PC's latter three quarters in 1999 indicate that Emery PC timely filed Forms 941 and made employment tax deposits exceeding $25,000 for each quarter.

In addition, Emery LLP and Emery PC each filed Forms W-3 for calendar year 1999, to which were attached the Forms W-2[8] issued by each entity to the law

---

[8]A Form W-2 must be filed by the employer with the Social Security Administration (SSA) and furnished to each employee which shows the wages paid and taxes withheld for the year for each employee. See secs. 31.6051-1(a), 31.6051-2(a), Employment Tax Regs. A Form W-3 is a transmittal form that reports the aggregated total of wages (and employment taxes) reported on each Form W-2 issued. Sec. 31.6051-2(a), Employment Tax Regs. An employer must

(continued...)

[*7] firm's employees. The amounts on each entity's Form W-3 and Forms W-2 generally correspond to the amounts recorded in each entity's general ledger for wages and employment taxes paid for that year. Specifically, Emery LLP's Form W-3 reported total wages paid of $13,451 and employment taxes paid of $2,872. Emery PC's Form W-3 reported total wages paid of $687,266 and employment taxes paid of $137,806.

III.  Respondent's request for Form 941 for 1Q 1999 from Emery PC

On or about March 11, 2006, respondent notified Emery PC that the Internal Revenue Service (IRS) had no record of Emery PC's having filed a Form 941 for 1Q 1999. Emery PC's accountant, David Grant, who had handled Emery PC's tax matters beginning with second quarter 1999, used Emery PC's general ledger to prepare a Form 941 for 1Q 1999, which he submitted to respondent on or about March 24, 2006.[9] The Form 941 reported employment tax due of $21,885 and claimed a credit for employment tax deposits of $21,706, on the basis of entries in

---

[8](...continued)
file with the SSA a Form W-3 and a copy of each Form W-2 reflected in it. See id.

[9] The parties have stipulated that respondent's account transcript for Emery PC's 1Q 1999 indicates that the return was submitted "on or about May 22, 2006". The account transcript on its face contradicts the stipulation. It states that the return was filed on March 24, 2006, and that the assessment date of the tax reported as due on the return was May 22, 2006. We accordingly disregard the parties' stipulation. See Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976).

[*8] Emery PC's general ledger for wages paid and employment tax deposits made in those aggregate amounts.  On the basis of this return, respondent assessed the $21,885 in employment taxes reported as due but did not credit Emery PC with the $21,706 of employment tax deposits claimed.  Respondent also assessed additions to tax under section 6651(a)(1) and (2) for failure to file a return and failure to pay as well as a penalty under section 6656(a) for failure to deposit.  Respondent then began sending collection notices to Emery PC for these amounts.

Mr. Grant thereafter submitted to the IRS Taxpayer Advocate Service a Form 941c, Supporting Statement To Correct Information, for Emery LLP's 1Q 1999, claiming adjustments for Emery LLP's overpayment of employment taxes (income tax withholding, Social Security tax, and medicare tax).  The Form 941c reported that Emery LLP had previously reported wages of $80,105 for 1Q 1999, but that its correct wages and employment tax liability for that period were $13,451 and $3,883, respectively.  Mr. Grant's cover letter to the Form 941c therefore requested that a $22,129 credit[10] be applied to Emery PC's employment tax liability for 1Q 1999.  An IRS representative thereafter informed Mr. Grant

---

[10]This figure is $35 less than the difference between the $26,047 of employment tax deposits credited to Emery LLP for 1Q 1999 and Emery LLP's employment tax liability of $3,883 for the first two weeks of 1Q 1999 as claimed in the Form 941c.  This $35 discrepancy is not explained in the record.

**[*9]** that a credit for Emery LLP's claimed overpayment could not be applied as requested because the three-year period of limitations for claiming a refund had expired.[11]

## IV.  The CDP hearing

Respondent thereafter issued to Emery PC a Letter 1058, Final Notice-- Notice of Intent to Levy and Notice of Your Right to a Hearing, regarding the 1Q 1999 employment tax that had been assessed against it.  Emery PC timely requested a hearing.  In the hearing request, Emery PC contended that the 1Q 1999 employment tax liability respondent sought to collect had been previously paid by it or a related entity, entitling Emery PC to either a credit, refund, setoff or equitable recoupment for the asserted liability and any resulting interest (without regard to whether any refund claim was timely), or relief on various other grounds. Emery PC further contended that the section 6651(a)(1) and (2) additions to tax and section 6656(a) penalty should be abated for reasonable cause.

Emery PC's counsel and a settlement officer assigned to the case held a face-to-face conference.  Emery PC's counsel explained that, through the error of a payroll service provider, Emery PC's employment tax deposits during 1Q 1999

---

[11]The parties have stipulated that Emery LLP has not made a claim for refund with respect to the employment taxes paid under its EIN for 1Q 1999.

**[\*10]** had been remitted under the EIN of Emery LLP, an entity through which the law firm had previously conducted its operations. Emery PC's counsel further contended that Emery PC should be credited with the 1Q 1999 deposits that had been erroneously submitted under Emery LLP's EIN, either through equitable recoupment or some other means.[12] Three days later the settlement officer ascertained from his own research that Emery PC and Emery LLP were both still active entities and on that basis concluded that it would not be appropriate to allow Emery PC to offset any of its 1Q 1999 employment tax liability with deposits Emery LLP had made for that period.[13]

When the settlement officer informed Emery PC's counsel of his findings and conclusion that Emery LLP's employment tax deposits for 1Q 1999 should not be credited towards Emery PC's employment tax liability for that period, Emery PC's counsel explained the reasons for maintaining the active status of both entities and promised to provide a written explanation with supporting

---

[12]Emery PC's counsel did not propose any collection alternatives or raise any other issues in connection with the hearing.

[13]At the time of the CDP hearing, the law firm had switched back to conducting its ongoing operations through the Emery LLP entity. This change had been made in 2004 when Mr. Cuti left the firm. As with the previous switch in principal operating entities, Emery PC was maintained after 2004 for the purpose of collecting revenues, satisfying liabilities, and distributing profits related to past work.

[*11] documentation.  Ten days later Emery PC's counsel indicated that the written explanation and documentation would be provided in a week.

Approximately 10 days after that deadline, lacking any written submission from Emery PC's counsel, the settlement officer concluded that the proposed levy should be sustained.  Just over a month later, with no submission from Emery PC's counsel in the interim, he submitted a notice of determination to his IRS Office of Appeals (Appeals) team manager for approval, and received it.

After the notice of determination was approved, but 11 days before it was issued, Emery PC's counsel submitted two letters with extensive exhibits to the settlement officer.  The first letter again explained the particulars of Emery PC's employment tax deposits for 1Q 1999 having been submitted under the EIN of Emery LLP and attached documents to substantiate the claim, including the 1999 Form W-3 and Forms W-2 that Emery LLP had filed and respondent's account transcript for Emery LLP's 1Q 1999, which respectively showed that Emery LLP had paid total wages of $13,451 for 1999 but had paid $26,047 in employment taxes for 1Q 1999.  The submission also included a printout of an August 2006 email exchange between Emery PC's certified public accountant (C.P.A.) and the Emery law firm's former payroll services provider for 1Q 1999 indicating that the

**[*12]** Emery law firm's payroll deposits for the entirety of that quarter had been mistakenly submitted under Emery LLP's EIN.

The second letter was directed at explaining why both Emery LLP and Emery PC had been maintained as active entities during 1999 and the years thereafter, with each entity being used at various times to conduct the bulk of the law firm's operations. Submitted with the letter were the Federal income tax returns for each entity covering 1999 and later years, to demonstrate the periods during which either entity reported the bulk of the law firm's income.

The settlement officer did not review these letters and attachments; instead, 11 days after the letters were received, the settlement officer issued a notice of determination sustaining the levy. The notice concluded that Emery PC had not shown that employment tax deposits had been "misapplied to a related business known as * * * [Emery LLP]" as it contended, because Emery LLP was still active and Emery PC had failed to provide an explanation and supporting documentation for the continued active status of Emery LLP. The notice further stated that, because Emery PC had not explained the continued active status of Emery LLP, Emery PC's claim that it was entitled to a credit for the time-barred refund of Emery LLP's employment tax overpayment through equitable recoupment was not

**[*13]** considered.[14]  The notice made no mention of Emery PC's claim for penalty abatement.  Emery PC timely petitioned this Court for review of the determination.

V.     Evidence proffered at trial

Emery PC proffered additional evidence at trial to support its claim that it was entitled to an offset for employment tax deposits that had been mistakenly made under Emery LLP's EIN.  This additional evidence included the testimony of Mr. Brinckerhoff regarding the law firm's history and operational structure, as well as the testimony of Emery PC's C.P.A. to the effect that:  (1) he had prepared Emery LLP and Emery PC's Forms W-3 for calendar year 1999 using their general ledgers, in which Emery LLP and Emery PC reported total wages of $13,451 and $687,266, respectively; (2) he had prepared Emery PC's Form 941 for 1Q 1999 that was filed in March 2006 at the request of the IRS by using Emery PC's general ledger; and (3) that he understood from his communications with Emery PC's payroll service provider that the provider had made all employment tax deposits for 1Q 1999 under the EIN of Emery LLP.  The documents introduced at

_____

[14]The notice also found that the requirements of applicable law and administrative procedure had been satisfied and that the proposed levy appropriately balanced the need for the efficient collection of taxes with the concern that the proposed collection action be no more intrusive than necessary. The notice additionally found that no other issue or collection alternative had been raised by Emery PC except its entitlement to a credit or offset for the 1Q 1999 employment tax deposits credited to Emery LLP.

**[*14]** trial (which had not been submitted to the settlement officer) included Emery PC's 1999 Forms W-3 and W-2, the 1999 general ledgers of Emery LLP and Emery PC, respondent's 1999 account transcripts for Emery PC and for Emery LLP (second, third, and fourth quarters only).

## Discussion

### I. Statutory framework

Section 6331(a) authorizes the Secretary to levy upon the property and property rights of any person liable for taxes (taxpayer) who fails to pay those taxes within 10 days after notice and demand for payment is made. Section 6331(d) and section 6330(a) together provide that the levy authorized in section 6331(a) may be made with respect to any unpaid tax only if the Secretary has given written notice to the taxpayer 30 days before levy of the amount of the unpaid tax and of the taxpayer's right to a hearing.

If a hearing under section 6330 is timely requested, it is to be conducted by an Appeals officer or employee who has had no prior involvement with respect to the unpaid tax at issue before the hearing. Sec. 6330(b)(1), (3). The Appeals officer or employee "shall at the hearing obtain verification from the Secretary [of the Treasury] that the requirements of any applicable law or administrative procedure have been met." Sec. 6330(c)(1). The taxpayer may raise at the hearing

[*15] "any relevant issue relating to the unpaid tax or the proposed levy". Sec. 6330(c)(2)(A). The taxpayer may also raise at the hearing "challenges to the existence or amount of the underlying tax liability * * * if the * * * [taxpayer] did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B).

At the conclusion of the hearing, the Appeals officer or employee must determine whether and how to proceed with the collection action and shall take into account: (1) the verification that the requirements of any applicable law or administrative procedure have been met; (2) the relevant issues raised by the taxpayer; (3) challenges to the underlying tax liability raised by the taxpayer, where permitted; and (4) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. Sec. 6330(c)(3).

Emery PC argues that the levy sustained in the notice of determination should not proceed because it is entitled, through equitable recoupment or other means, to offset the employment tax liability that respondent seeks to collect with an overpayment of employment tax made by Emery LLP for the same period, the refund of which is now time barred. It argues that without this offset, respondent will have twice collected the 1Q 1999 employment taxes arising from the payment

**[\*16]** of wages to the employees of the law firm after January 15, 1999--once from the employment tax deposits made under Emery LLP's EIN for 1Q 1999 and a second time from the proposed levy on Emery PC's property. Respondent argues that the levy may proceed because the settlement officer's determination upholding the levy was not an abuse of discretion in view of the fact that Emery PC never provided the settlement officer with any proof of its claim that the employment taxes sought from it were duplicative of those already paid by Emery LLP.

## II.  Equitable recoupment

Section 6214(b) provides that this Court "may apply the doctrine of equitable recoupment to the same extent that it is available in civil tax cases before the district courts of the United States and the United States Court of Federal Claims."[15]  The doctrine of equitable recoupment is a judicially created doctrine

---

[15]Respondent has not disputed that we have jurisdiction to apply equitable recoupment in a sec. 6330 proceeding.  Cf. Menard, Inc. v. Commissioner, 130 T.C. 54, 65-68 (2008) (rejecting the Commissioner's argument that our equitable recoupment jurisdiction extends only to taxes over which we have deficiency or overpayment jurisdiction), rev'd on another issue, 560 F.3d 620 (7th Cir. 2009).

The jurisdictional grant in sec. 6214(b) is expressed "in the broadest of terms", Menard, Inc. v. Commissioner, 130 T.C. at 66, and we see nothing in the statute that would limit our jurisdiction to apply the doctrine when exercising our jurisdiction pursuant to sec. 6330(d) to review a notice of determination concerning a collection action, see also Karagozian v. Commissioner, T.C. Memo.
(continued...)

**[\*17]** that, under certain circumstances, allows a litigant to avoid the bar of an

expired statutory limitations period. Menard, Inc. v. Commissioner, 130 T.C. 54,

62 (2008), rev'd on another issue, 560 F.3d 620 (7th Cir. 2009). The doctrine

prevents an inequitable windfall to a taxpayer or to the Government that would

otherwise result from the inconsistent tax treatment of a single transaction, item, or

event affecting the same taxpayer or a sufficiently related taxpayer. Id. Equitable

recoupment operates as a defense that may be asserted by a taxpayer to reduce the

Commissioner's timely claim of a deficiency, or by the Commissioner to reduce

the taxpayer's timely claim for a refund. Id. When applied for the benefit of a

taxpayer, the equitable recoupment doctrine allows a taxpayer to raise a time-

barred claim of a tax overpayment as an offset to reduce or eliminate the amount

owed on the Commissioner's timely claim. See Rothensies v. Elec. Storage

Battery Co., 329 U.S. 296, 299-300 (1946); Menard, Inc. v. Commissioner, 130

T.C. at 62. Equitable recoupment cannot be used offensively to seek a money

---

[15](...continued)
2013-164 (adjudicating the merits of the taxpayer's equitable recoupment claim in
a sec. 6330 proceeding), aff'd, 595 F. App'x 87 (2d Cir. 2015); Revah v.
Commissioner, T.C. Memo. 2010-269 (same), rev'd on another issue and
remanded, 584 F. App'x 811 (9th Cir. 2014), and 584 F. App'x 813 (9th Cir.
2014).

**[*18]** payment, but only defensively to offset an adjudicated deficiency. United States v. Dalm, 494 U.S. 596, 611 (1990).

Although the doctrine is typically invoked by taxpayers as a defense to a deficiency, the origins of equitable recoupment lie in equitable principles concerning the collection of indebtedness--specifically, the inequity of the Government, as sovereign, collecting a tax debt from a taxpayer arising from a transaction when the Government already holds his money (mistakenly, but beyond the limitations period for claiming a refund) as a consequence of the taxation of the same transaction on an inconsistent theory. See Bull v. United States, 295 U.S. 247, 259-263 (1935); see also Dalm, 494 U.S. at 604-605. Given the foundation of the doctrine in principles of debt collection, it undoubtedly applies with equal force when the Government is, as here, seeking to collect rather than assess a tax.

As a general rule, the party claiming the benefit of an equitable recoupment defense must establish that it applies. See Menard, Inc. v. Commissioner, 130 T.C. at 62; Estate of Mueller v. Commissioner, 101 T.C. 551, 556 (1993). To establish that equitable recoupment applies, a party must establish the following elements:  (1) the overpayment or deficiency for which recoupment is sought by way of offset is barred by an expired period of limitations; (2) the time-barred

**[\*19]** overpayment or deficiency arose out of the same transaction, item, or taxable event as the overpayment or deficiency before the Court; (3) the transaction, item, or taxable event has been inconsistently subjected to two taxes; and (4) if the transaction, item, or taxable event involves two or more taxpayers, there is sufficient identity of interest between the taxpayers subject to the two taxes that the taxpayers should be treated as one. See Dalm, 494 U.S. at 604-605; Menard, Inc. v. Commissioner, 130 T.C. at 62-63; Estate of Branson v. Commissioner, 113 T.C. 6, 15 (1999), aff'd, 264 F.3d 904 (9th Cir. 2001).

III.    Standard and scope of review

Before considering whether the proposed levy may proceed we note the parties' arguments concerning the appropriate standard and scope of our review of Emery PC's equitable recoupment claim.  The standard of review is two tiered when we review an Appeal officer's determination in a section 6330 proceeding. Where the underlying tax liability is properly at issue, we review the determination de novo, Goza v. Commissioner, 114 T.C. 176, 181-182 (2000), and the scope of our review extends to evidence introduced at the trial that was not a part of the administrative record, see, e.g., Jordan v. Commissioner, 134 T.C. 1, 8-9 (2010) supplemented by T.C. Memo. 2011-243.  Where the validity of the underlying tax liability is not at issue, we review the determination for abuse of discretion.  Sego

**[\*20]** v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. at 182; see also Williams v. Commissioner, 718 F.3d 89, 92 (2d Cir. 2013). When the review is for abuse of discretion, it is the position of the Tax Court that the scope of our review extends beyond the administrative record to include evidence adduced at trial, Robinette v. Commissioner, 123 T.C. 85 (2004), rev'd, 439 F.3d 455 (8th Cir. 2006), although we were reversed on this point by the Court of Appeals for the Eighth Circuit, which held that the scope of review in these circumstances is confined to the administrative record. Other Courts of Appeals have agreed. See Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-116, and aff'g in part, vacating in part decisions in related cases; Murphy v. Commissioner, 469 F.3d 27, 31 (1st Cir. 2006), aff'g 125 T.C. 301 (2005).

Emery PC contends that its equitable recoupment claim is a challenge to the underlying tax liability, triggering de novo review that would include consideration of evidence presented at the trial that was not considered by the settlement officer. Respondent contends otherwise, arguing that Emery PC's equitable recoupment claim is not a challenge to the underlying tax liability and accordingly is reviewed for abuse of discretion on the basis of the administrative record alone.

[*21] Because we conclude that the outcome of this case would be the same regardless of which standard and scope of review applies, we have no need to decide that issue. That is because, on the basis of the administrative record alone, we find that the settlement officer abused his discretion in failing to consider Emery PC's equitable recoupment claim and the documentation it provided to support that claim.

First, we note that the administrative record includes not only material that the settlement officer reviewed but also material that was <u>available</u> for his review. See <u>Thompson v. U.S. Dept. of Labor</u>, 885 F.2d 551, 553-556 (9th Cir. 1989); <u>West v. Commissioner</u>, T.C. Memo. 2010-250, slip op. at 11 n.11. Moreover, at the time of Emery PC's CDP hearing, the Internal Revenue Manual (IRM) instructed Appeals employees conducting such hearings to "[c]onsider information received after the due date for supplying information but prior to issuance of the Notice of Determination/Decision Letter." IRM pt. 8.22.2.2.4.11(1)(c) (Oct. 30, 2007); <u>see Shanley v. Commissioner</u>, T.C. Memo. 2009-17, slip op. at 15 (noting the de facto extension of time for submitting information arising from the requirement in IRM pt. 8.22.2.2.4.11(1)(c) that an Appeals employee consider information submitted before the issuance of a notice of determination). It is undisputed that Emery PC submitted substantial information and supporting

[*22] documents 11 days before the notice of determination was issued and that the settlement officer did not consider the submission.[16] The submission included two letters with extensive attachments. In view of the fact that these materials were available for the settlement officer's review, and that IRM guidelines instructed him to review them, we find that the two letters and their attachments are part of the administrative record.

The first letter explained the law firm's organizational history, including the firm's alternating use of Emery LLP and Emery PC as its principal operating entity, with the other entity maintained for the purpose of collecting revenues and paying liabilities arising from past work. This alternating use was substantiated with copies of each entity's Federal income tax returns for several years, demonstrating that the bulk of the firm's income was received through only one of the two entities in any given year. The second letter explained the circumstances of Emery PC's employment tax payments for 1Q 1999 having been remitted under Emery LLP's EIN, and substantiated the error by including copies of Emery LLP's Form W-3 and Forms W-2 for 1999 and respondent's account transcript for

---

[16]The notice of determination states that no consideration was given to Emery PC's claim that it was entitled to use a time-barred refund of Emery LLP's employment tax overpayment through equitable recoupment because Emery PC had failed to provide a written explanation and documentation for the continued active status of Emery LLP.

**[\*23]** 1Q 1999, which together demonstrated that Emery LLP had reported wage payments of only $13,451 for all of 1999 (per its Form W-3) and yet had paid employment taxes of $26,047 for the first quarter of that year (per the account transcript).

We are persuaded that the obvious discrepancy between the wage payments Emery LLP reported for all of 1999 and the employment taxes it paid for the first quarter of that year would have alerted the settlement officer to the need for further investigation. In any event, the settlement officer's failure to consider the significant information Emery PC provided before issuance of the notice of determination was contrary to IRM guidelines and led to the erroneous conclusion that Emery PC had failed to document its claims. We conclude in these circumstances that it was an abuse of discretion for the settlement officer to fail to consider Emery PC's late submission.

Where the Appeals employee conducting a CDP hearing has committed an abuse of discretion, we sometimes remand the case for remedial action in a supplemental hearing. See, e.g., Estate of Sanfilippo v. Commissioner, T.C. Memo. 2015-15; Antioco v. Commissioner, T.C. Memo. 2013-35. A remand, however, should be "necessary or productive". Lunsford v. Commissioner, 117 T.C. 183, 189 (2001). In any such remand, "the Appeals Office is not limited to

[*24] what the Appeals Office considered during the first administrative hearing."
Jordan v. Commissioner, T.C. Memo. 2011-243, 2011 WL 4596002, at *4; see
also Hoyle v. Commissioner, 136 T.C. 463, 468 (2011), supplementing 131 T.C.
197 (2008); Rivas v. Commissioner, T.C. Memo. 2017-56, at *12.  The most
significant items of evidence that Emery PC offered at trial were the 1Q 1999
general ledgers for itself and Emery LLP.  These ledgers demonstrate conclusively
that all but the first of the employment tax payments recorded in respondent's
1Q 1999 account transcript for Emery LLP were in fact remitted by Emery PC
from its funds (albeit under Emery LLP's EIN) with respect to wages paid to the
eight firm employees that gave rise to the employment tax liability that Emery
LLP mistakenly reported as its own.  In short, Emery PC was the source of the
employment tax payments for 1Q 1999 that created Emery LLP's overpayment,
and Emery PC paid the wages that gave rise to the employment tax liability that
was paid under Emery LLP's EIN.  This trial evidence, which--as discussed infra
p. 30--is within the scope of our review for purposes of deciding Emery PC's
claim for abatement of the additions to tax and penalty respondent seeks to collect,
would presumably be presented to the Appeals employee conducting a supplement
hearing pursuant to any remand.  In our view, when the general ledgers for each
entity for 1Q 1999 are compared to respondent's corresponding account

[*25] transcripts, they conclusively establish Emery PC's equitable recoupment claim. In the circumstances, we see nothing productive coming from a remand and have instead considered the ledgers in determining whether Emery PC has demonstrated entitlement to equitable recoupment with respect to Emery LLP's employment tax overpayment for 1Q 1999.

IV. Application of equitable recoupment

A. Element 1: time-barred overpayment

The record establishes that Emery LLP overpaid its employment taxes for 1Q 1999. Emery LLP's general ledger records that Emery LLP paid total wages of $13,451 for that quarter and none for the remainder of the year. However, respondent's account transcript for Emery LLP's 1Q 1999 records that Emery LLP paid $26,047 of employment taxes for that period. As the tax paid is nearly double the wages paid, it is obvious that Emery LLP has a substantial overpayment of employment taxes for 1Q 1999.[17]

Section 6511(a) provides that refund claims must be filed within the later of three years from the date the return was filed or two years from the date the tax

---

[17]The record does not allow us to compute the exact amount of Emery LLP's overpayment given the wages it paid during 1Q 1999. The parties will therefore be expected to calculate the amount of the overpayment in a Rule 155 computation.

[*26] was paid. The parties stipulated that as of trial Emery LLP had not filed a refund claim for any overpayment of employment taxes for 1Q 1999. As Emery LLP's latest employment tax deposit for 1Q 1999 was made on March 31, 1999, and received a few days after, and the parties have stipulated that Emery LLP timely filed a Form 941 for that quarter,[18] it is clear that any claim for a refund of Emery LLP's employment tax overpayment for 1Q 1999 is time barred. Thus, Emery PC has established the existence of a time-barred overpayment.

B.     Element 2:  same transaction, item, or taxable event

Emery PC contends that Emery LLP's time-barred overpayment, and Emery PC's underpayment of employment tax, for 1Q 1999 arose out of the same transaction or taxable event. Respondent disagrees, contending that there are two taxable events:  (1) the assessment of employment taxes in May 1999 based on Emery LLP's "voluntary payment" and (2) the assessment of employment taxes in May 2006 based on Emery PC's self-reported liability on the Form 941 it filed in March 2006.

Respondent misconstrues what constitutes a taxable event for this purpose. In our view, the taxable event in the case of employment taxes is not the

_____

[18]A Form 941 is generally due on or before the last day of the first calendar month following the period for which it is made. See sec. 31.6071(a)-1(a), Employment Tax Regs.

[*27] Commissioner's assessment of tax but instead the employer's payment of wages, which in general triggers the employer's obligation to withhold and/or to pay Social Security taxes, hospital taxes, and income tax withholdings--the employment taxes at issue in this case.  See generally secs. 3102, 3111, 3402, 3403.  Thus the taxable event here was the payment of wages to the eight employees of the law firm during the latter 75 days of 1Q 1999 (i.e., wage payments made after the first payment of wages on January 15, 1999).  The law firm's employees received wages biweekly and accordingly there were five such payments to seven and then, after the first two payments, eight employees during this 75-day period.  Each of the five payments of wages by Emery PC was a separate taxable event triggering an employment tax liability.  Thus, strictly speaking, there were 5 taxable events (or 38, if the seven, then eight, employees are disaggregated) in which Emery PC incurred an employment tax liability that was paid by Emery LLP, and for which respondent both seeks to retain the tax paid by Emery LLP and also to collect it from Emery PC.  For each of these 5 (or 38) taxable events, in the absence of equitable recoupment, respondent will have collected employment tax twice on the same payment of wages--albeit with respect to 5, or 38, separate taxable events.  All of the wage payments were to the same employees during the same taxable period.  Cf. Rothensies v. Elec. Storage Battery

[*28] <u>Co.</u>, 329 U.S. 296 (declining to treat excise taxes paid on battery sales in different taxable years as arising from the same transaction for purposes of equitable recoupment). Thus, the components of the time-barred overpayment and the employment tax liability that respondent seeks to collect in each instance arose from the same taxable event, albeit 5 or 38 of them. Because the employment taxes that respondent seeks to retain and to collect, respectively, arose from the same payments of wages to the same employees during the same taxable period, we conclude that the requirement that the two taxes arise from the same taxable event has been satisfied.

C.   <u>Element 3: inconsistently subjected to two taxes</u>

The taxable event here--the payment of aggregate wages of $45,037 to the law firm's eight employees during the latter 75 days of 1Q 1999--has been taxed twice on inconsistent theories. Emery LLP has paid employment taxes of $21,706 on the theory that it was the payor of wages to the law firm's employees for the foregoing period, and respondent now seeks to collect $21,885 in employment taxes (plus penalties and interest) from Emery PC on the inconsistent theory that Emery PC was the payor of the same wages during the same period. Thus, Emery PC has demonstrated satisfaction of the third element for application of equitable recoupment.

**[*29]** D.　　Element 4:  identity of interest

Courts may in certain circumstances permit a taxpayer to recoup an erroneously paid tax that the taxpayer did not pay himself.  Estate of Branson v. Commissioner, 113 T.C. at 36 (stating that "absolute identity of interest" between payor and recipient is not required).  But the payor of the tax and the recipient of the recoupment must have a sufficient identity of interest such that they should be treated as a single taxpayer in equity.  See Stone v. White, 301 U.S. 532, 537 (1937); Parker v. United States, 110 F.3d 678, 683 (9th Cir. 1997).  In such circumstances, "any distinction of legal entities would be purely artificial."  Estate of Branson v. Commissioner, 113 T.C. at 36.

Though Emery LLP and Emery PC were separate legal entities with distinct EINs during 1Q 1999, each was owned by the same four individuals during that period, i.e., Messrs. Emery, Cuti, Brinckerhoff, and Abady.  Consequently, the burden of double taxation in this situation would be borne by the same individuals.  Therefore, Emery PC has demonstrated sufficient identity of interest with Emery LLP to allow Emery PC to recoup the employment tax for 1Q 1999 that Emery LLP overpaid.  See id.

**[*30]** V.    Penalty abatement

Although Emery PC sought abatement of the additions to tax under section 6651(a)(1) and (2) and the penalty under section 6656(a) for 1Q 1999 in its hearing request, the notice of determination is silent regarding the additions to tax and penalty, which we treat as a determination to deny Emery PC's claim for abatement.  The assessed additions to tax and penalty are part of the underlying tax liability for purposes of section 6330(c)(2)(B).  See Staff It, Inc. v. United States, 482 F.3d 792 (5th Cir. 2007) (treating section 6656(a) penalty as part of underlying tax liability subject to de novo review); Callahan v. Commissioner, 130 T.C. 44, 49 (2008) ("We have interpreted the phrase 'underlying tax liability' as including any amounts a taxpayer owes pursuant to the tax laws that are the subject of the Commissioner's collection activities.") (quoting Katz v. Commissioner, 115 T.C. 329, 338-339 (2000)); Stevens Techs., Inc. v. Commissioner, T.C. Memo. 2014-13, at *25.  Respondent does not contend, and the record does not establish, that Emery PC had a prior opportunity to dispute the additions to tax and penalty before the CDP hearing.  We accordingly review Emery PC's liability for them de novo.  See Goza v. Commissioner, 114 T.C. at 181-182.

**[*31]** Where a taxpayer fails to timely file a return, including a Form 941, section 6651(a)(1) imposes an addition to tax equal to 5% of the amount required to be shown as tax for each month the return is late, not to exceed 25% in the aggregate. Where a taxpayer fails to timely pay the tax shown on a return, including a Form 941, section 6651(a)(2) imposes an addition to tax equal to 0.5% of the amount shown as tax for each month the failure continues, not to exceed 25% in the aggregate. Where a taxpayer fails to make a Federal tax deposit by the date prescribed, section 6656(a) imposes a penalty of up to 10% of the undeposited amount. Additions to tax under section 6651(a)(1) and (2) and penalties under section 6656 may be abated if a taxpayer proves that the failure was due to reasonable cause and not willful neglect. See secs. 6651(a)(1) and (2), 6656(a); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

The record establishes, and the parties do not dispute, that Emery PC failed to timely file a Form 941 for 1Q 1999, pay the tax reported thereon, or make timely deposits of the employment tax arising from its payment of wages to the law firm's employees during that quarter. However, we hold that Emery PC has shown that its failure to timely file a Form 941, pay the tax thereon, or make timely employment tax deposits for 1Q 1999 was due to reasonable cause.

**[*32]** Reasonable cause for failure to timely file returns exists if the taxpayer can establish that it "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Reasonable cause for failing to pay taxes exists if the taxpayer can establish that it "exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless * * * unable to pay the tax". Id. Courts have relied on this ordinary-business-care-and-prudence standard to determine whether a taxpayer had reasonable cause for failing to timely make deposits. See, e.g., Diamond Plating Co. v. United States, 390 F.3d 1035, 1038 (7th Cir. 2004); Van Camp & Bennion v. United States, 251 F.3d 862, 866-868 (9th Cir. 2001); E. Wind Indus., Inc v. United States, 196 F.3d 499, 508 (3d Cir. 1999); Fran Corp. v. United States, 164 F.3d 814, 816-819 (2d Cir. 1999); Brewery, Inc. v. United States, 33 F.3d 589, 592 (6th Cir. 1994); see also Stevens Techs., Inc. v. Commissioner, T.C. Memo. 2014-13. The determination of whether a taxpayer exercised ordinary business care and prudence in providing for payment of a tax liability is based on all the facts and circumstances of the taxpayer's financial situation. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

We conclude, on the basis of all the facts and circumstances, that Emery PC exercised ordinary business care and prudence to ensure that a Form 941 for

**[\*33]** 1Q 1999 was timely filed and its employment taxes were paid. The paramount factor in this case is that a return was timely filed and the employment taxes were timely paid with respect to the wages at issue, albeit under an incorrect EIN. In these circumstances we hold that Emery PC's failure to timely file a Form 941, pay the tax reported thereon, and deposit its employment taxes for 1Q 1999 was due to reasonable cause and not willful neglect. Accordingly, Emery PC is entitled to abatement of the section 6651(a)(1) and (2) additions to tax and the section 6656(a) penalty that respondent assessed and now seeks to collect.

VI.    Conclusion

We hold that Emery PC may equitably recoup Emery LLP's employment tax overpayment for 1Q 1999 to offset Emery PC's unpaid employment taxes for that period. Additionally, we hold that Emery PC is entitled to abatement for the additions to tax under section 6651(a)(1) and (2) and penalty under section 6656(a) that respondent has assessed for Emery PC's 1Q 1999. However, to the extent that Emery PC's underpayment of employment tax for 1Q 1999 exceeds Emery LLP's overpayment of employment tax for that quarter, we sustain respondent's determination to collect the balance by levy.

[*34] To reflect the foregoing,

Decision will be entered under

Rule 155.